Ijya TULLOSS, Plaintiff-Appellant,

v.

**NEAR NORTH MONTESSORI SCHOOL, INC.,**
Defendant-Appellee.

No. 84–2592.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 17, 1985.
Decided Oct. 29, 1985.

RIPPLE, Circuit Judge.

Plaintiff, Ijya Tulloss, instituted suit against Near North Montessori School, Inc. (Near North) under Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e–2(a)(1) and (2) (1981) (Title VII). Mrs. Tulloss alleged that she was not rehired by Near North because of a pattern of discrimination against her based on her Philippine Islands national origin. Following a bench trial, the district court, finding that Near North's actions were taken for nondiscriminatory reasons, entered judgment for the defendant. Plaintiff appeals the district court's refusal to admit into evidence the determination of reasonable cause and the investigative file of the Equal Employment Opportunity Commission (EEOC), its failure to discuss whether she had established a prima facie case, and its finding that defendant's actions were not motivated by a discriminatory intent. We affirm.

## FACTS

Plaintiff, Ijya Tulloss, a woman born in Manila, Philippines, is a citizen of the United States. Near North, the defendant, is an Illinois corporation which operates a Montessori elementary school in Chicago. Mrs. Tulloss was employed by Near North for ten years before her termination in 1976. She holds an American Montessori Society teacher's certificate and is certified to teach elementary school in the state of Illinois. Generally, her evaluations reflected favorably upon her efficacy as an educator. In fact, Mrs. Tulloss taught without incident until her final year at Near North.

During the 1975–1976 school year, certain disciplinary actions taken by plaintiff against her students were brought to the attention of the school's board of directors. There were five such actions. According to the district court, plaintiff was accused of tying a child to a chair with a piece of yarn, hitting or "tapping" a child with a shoe, using threatening words with a pupil, humiliating one of her students and withholding lunch as a form of punishment.

Ernest T. Rossiello, Chicago, Ill., for plaintiff-appellant.

Stephen Stern, Mitchell & Black, P.C., Chicago, Ill., for defendant-appellee.

Before ESCHBACH, EASTERBROOK and RIPPLE, Circuit Judges.

Although no formal complaints were lodged by the parents of the children involved, these actions, which were allegedly in direct violation of Montessori teaching methods, caused certain school board members to seek an informal meeting with plaintiff to settle the matter. When plaintiff refused to meet informally, she was asked to appear before the joint committee of the board to discuss informally the alleged incidents. Again, plaintiff refused to meet.

Finally, plaintiff was personally notified that a school board meeting had been called for April 12, 1976 to discuss the incidents. Plaintiff brought to the meeting members of the press, an attorney and a court reporter. Nothing was resolved at the meeting because of the hostility between the factions present. The school board took the position that its questions regarding the disciplinary measures taken by Mrs. Tulloss were not being answered; plaintiff believed that she was a victim of discriminatory practices by the board.

As a result of the unsuccessful April 12, 1976 meeting, the school board recommended to the school that plaintiff's contract not be renewed because of her refusal to discuss her disciplinary practices. Thereafter, plaintiff was advised by letter that her contract would not be renewed.

Mrs. Tulloss filed charges against Near North with the EEOC alleging that she was terminated because of her national origin. Upon receipt of a right to sue letter from the EEOC on August 6, 1981, plaintiff filed a timely claim under Title VII in the United States District Court for the Northern District of Illinois. Following a thirteen day trial, the district judge ruled in favor of the defendant. This appeal is taken from that judgment.

## I. ADMISSIBILITY OF THE EEOC'S DETERMINATION AND INVESTIGATORY FILE

On this appeal, plaintiff claims that it was reversible error for the district court to refuse to consider the EEOC's determination of reasonable cause and that agency's entire investigative file. She alleges that the information contained in the file would have corroborated her claim and mandated judgment in her favor.

The role of the EEOC file in Title VII litigation can best be assessed by recalling the role of the EEOC in the overall statutory scheme enacted by the Congress. The EEOC operates to investigate claims of discrimination, to promote conciliation and to institute civil suits against employers or unions which have been charged with discriminatory practices. *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 44, 94 S.Ct. 1011, 1017–18, 39 L.Ed.2d 147 (1974). The proceedings before the EEOC are nonbinding and nonadjudicative in nature. *Id.* Congress considered providing the EEOC with cease and desist authority and an adjudicative function comparable to that of the National Labor Relations Board. It also considered limiting the scope of judicial review in order to expedite the processing of claims. *See* H.R.Rep. No. 238, 92d Cong., 1st Sess. 8–12, *reprinted in* 1972 U.S.Code Cong. & Ad.News 2137, 2143–47. Proponents of this approach believed that it would encourage judicial economy and would maximize the benefit derived from the agency's expertise. *Id.* However, this approach was soundly rejected. Instead, Congress opted for full judicial review on the merits of the claims. Thus, the factfinder is a district judge rather than an administrative agency hearing officer. *Id.* at 58–63, *reprinted in* 1972 U.S.Code Cong. & Ad.News 2167–72. Consequently, in determining the admissibility of EEOC records at a trial in a United States district court, we must "ever be mindful that Congress, in enacting Title VII, thought it necessary to provide a judicial forum for the ultimate resolution of discriminatory employment claims. It is the duty of courts to assure the full availability of this forum." *Alexander v. Gardner-Denver Co.*, 415 U.S. at 60 n. 21, 94 S.Ct. at 1025 n. 21. It is against this background that we must assess the district judge's actions with respect to the EEOC's determination of reasonable cause and its investigatory files.

We shall deal with each of these separately.

## A. EEOC DETERMINATIONS OF REASONABLE CAUSE

The Supreme Court has determined that administrative findings regarding claims of discrimination are generally admissible under Fed.R.Evid. 803(8)(C) (the public records and investigatory file exception to the hearsay rule) in a trial *de novo*. *Chandler v. Roudebush*, 425 U.S. 840, 863 n. 39, 96 S.Ct. 1949, 1961 n. 39, 48 L.Ed.2d 416 (1976).[1] This exception is applicable "unless the sources of information or other circumstances indicate lack of trustworthiness." Fed.R.Evid. 803(8)(C). Of course, a court must always determine whether the prejudicial effect of admitting such unreliable information may outweigh its probative value and thereby render it inadmissible under Fed.R.Evid. 403. *See Johnson v. Yellow Freight System, Inc.*, 734 F.2d 1304, 1309–10 (8th Cir.1984).

Only two circuits have held that EEOC determinations of reasonable cause that there has been a violation of the Act are *per se* admissible in Title VII cases. *Garcia v. Gloor*, 618 F.2d 264, 272 (5th Cir. 1980); *Bradshaw v. Zoological Society of San Diego*, 569 F.2d 1066, 1069 (9th Cir. 1978). However, in *Bradshaw*, the court added that the district court was free to determine the weight to assign to the evidence. 569 F.2d at 1069. In an earlier case, the Fifth Circuit similarly decided that, while it was error to exclude the EEOC's report, the weight to be accorded the report was within the sound discretion of the district court judge. *Smith v. Universal Services, Inc.*, 454 F.2d 154, 157–58 (5th Cir.1972) (quoting *Puggioni v. Luchenbach Steamship Co.*, 286 F.2d 340, 344 (2d Cir.1961)). Other circuits which have

considered the admissibility of the agency's determination or report have concluded that such decisions should be left to the discretion of the district judge. *See Johnson v. Yellow Freight System, Inc.*, 734 F.2d 1304, 1309 (8th Cir.1984); *Whatley v. Skaggs Cos.*, 707 F.2d 1129, 1137 (10th Cir.1983); *Georator Corp. v. EEOC*, 592 F.2d 765, 769 (4th Cir.1979); *Walton v. Eaton Corp.*, 563 F.2d 66, 75 (3d Cir.1977); *Heard v. Mueller Co.*, 464 F.2d 190, 194 (6th Cir.1972).

This circuit has yet to choose between these two approaches. While the two are theoretically different, they are functionally similar. Even in those circuits in which EEOC determinations are *per se* admissible, the trial judge has the discretion to give as much or as little weight to them as he deems appropriate. Therefore, in all circuits, the trial judge has, as a practical matter, great discretion in his treatment of this material.

We believe that this fundamental reliance on the discretion of the trial judge in all circuits reduces this "conflict" to a largely academic issue. Moreover, we believe that such reliance on the trial judge is both compatible with the Supreme Court's view in *Chandler v. Roudebush*, 425 U.S. 840, 96 S.Ct. 1949, 48 L.Ed.2d 446 (1976), and with common sense. *Chandler* does not foreclose the trial judge's discretion to limit the report "if sufficient negative factors are present." Fed.R.Evid. 803(8)(C) (Notes of Advisory Committee on Proposed Rules). As the Eighth Circuit noted in a slightly different context, "EEOC determinations are not homogeneous products; they vary greatly in quality and factual detail." *Johnson v. Yellow Freight System, Inc.*, 734 F.2d 1304, 1309 (8th Cir. 1984).[2] Similarly, we believe that a trial

---

1. "Prior administrative findings made with respect to an employment discrimination claim *may*, of course, be admitted as evidence at a federal-sector trial *de novo*." *Chandler v. Roudebush*, 425 U.S. 840, 863 n. 39, 96 S.Ct. 1949, 1961 n. 39, 48 L.Ed.2d 416 (1976) (emphasis supplied).

2. *Johnson v. Yellow Freight System, Inc.*, 734 F.2d 1304 (8th Cir.1984), involved the trial of a cause of action under 42 U.S.C. § 1981 (1981), which was tried before a jury. Here, it was even more important, of course, that the admissibility of the EEOC material be committed to the trial judge's sound discretion since the chance of misinterpretation was significantly greater. Nevertheless, while the trial judge ob-

judge's concern with fulfilling the legislative command that the discrimination claim be subject to independent judicial determination may enter into the decision as to whether to admit the EEOC report. *Alexander v. Gardner-Denver Co.*, 415 U.S. at 60 n. 21, 94 S.Ct. at 1025 n. 21. Thus, the district judge may factor into his decision "the danger of unfair prejudice to the defendant" and that the "time spent by the defendant in exposing the weaknesses of the EEOC report would add unduly to the length of the trial." *Johnson v. Yellow Freight System, Inc.*, 734 F.2d at 1309.

■ On the record, there is some ambiguity as to whether the district judge actually admitted the determination. There is, however, no question that he was aware of its contents. At one point, he even read the determination to counsel in open court. Tr. 132. Moreover, in declining to give the EEOC determination any weight in his evaluation of the evidence, he specifically relied on his obligation to provide a judicial forum for the ultimate resolution of the discriminatory employment claim and to base his judgment on the evidence presented to him at trial. *Alexander v. Gardner-Denver Co.*, 415 U.S. at 60 n. 21, 94 S.Ct. at 1025 n. 21. He believed that consideration of the determination was tantamount to saying "this has already been decided and here is the decision." Tr. 125. We cannot say that, under the circumstances of this case, where it is not contended that the evidentiary material available to the EEOC was not also available to the district court, the trial judge abused his discretion.

### B. THE INVESTIGATIVE FILE

At the beginning of the trial, plaintiff's counsel made a considerable effort to persuade the court to admit the entire investigative file. Ultimately, the court stated

that it would decide on the admissibility of each item from the file when it was offered into evidence. Generally, the courts of appeals are in agreement that it is not error to exclude the investigatory file of the EEOC in order to insure a fair and independent determination of the facts by the court.[3] As one court has noted, the EEOC file is a "mish-mash of self-serving and hearsay statements and records; ... justice requires that the testimony of the witnesses be given in open court, under oath, and subject to cross-examination." *Gillin v. Federal Paper Board Co.*, 479 F.2d 97, 99 (2d Cir.1973) (quoting the district court's opinion, 52 F.R.D. 383, 385 (D.Conn.1970)).

A rule of *per se* admissibility of the investigative file would clearly undercut the district court's function as independent fact-finder. The better approach is to permit the district court to determine, on a case-by-case basis, what, if any, EEOC investigatory materials should be admitted at trial. This approach is consistent with the function of the judge in a nonjury case. In such cases, "the presumption is that the trial court considered only the competent evidence and disregarded all evidence which was incompetent." *Thompson v. Carley*, 140 F.2d 656, 660 (8th Cir.1944).

■ In this case, the district court's decision not to admit the entire file was within its discretion and hardly constitutes error. We cannot dispute a district judge's determination that a file containing such potentially prejudicial material as personal statements by the plaintiff, newspaper articles, statements by plaintiff's professional and personal supporters, opinions of the EEOC investigator, and letters relating to settlement negotiations should not be admitted. Moreover, Mrs. Tulloss had every opportunity at trial to admit any relevant evidence and to have anyone testify on her behalf.

viously has more discretion in a Title VII matter, tried without a jury, he still must determine whether, given his responsibility to try the case "*de novo,*" the usefulness of the EEOC report outweighs the possibility of prejudice or delay.

**3.** *Garcia v. Gloor*, 618 F.2d 264 (5th Cir.1980), which Mrs. Tulloss contends stands for the

proposition that the entire EEOC file should be admitted, is scant authority for that proposition. The court's short discussion of the matter deals with both the EEOC determination and report. It does not squarely address the admissibility of the entire investigative file.

She was expressly advised by the district judge that he would rule on the admissibility of materials contained in the EEOC file on an item-by-item basis at the time that any such item was offered in evidence, and it appears from the record that this procedure was followed for the duration of the trial without objection from plaintiff.

## II. THE PRIMA FACIE CASE

■ Plaintiff alleges that it was error for the district court not to state whether she made out a prima facie case. The seminal case in the area of burdens of pleading and proof in private, non-class action disparate treatment cases under Title VII is *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). According to the three-step formula enunciated by the Supreme Court, a Title VII plaintiff must first establish a prima facie case by proving: a) that he belongs to a protected class; b) that he applied for an existing job for which he was qualified; c) that despite his qualifications, he was rejected; and d) after the rejection, the employer continued to seek applicants of the plaintiff's qualifications. *Id.* at 802, 93 S.Ct. at 1824. If the plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant to provide a legitimate nondiscriminatory reason for its actions. *Id.* The defendant need not "prove" nondiscriminatory intent but, rather, must simply "produce" evidence sufficient to meet the inference of discrimination raised by the plaintiff's prima facie showing. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 254–55, 101 S.Ct. 1089, 1094–95, 67 L.Ed.2d 207 (1981). If the defendant meets his burden of production, the plaintiff must be given a fair opportunity to show that the reasons articulated by defendant for its action are merely pretext masking discriminatory motive. *McDonnell Douglas*, 411 U.S. at 804–05, 93 S.Ct. at 1825–26.

This court has noted recently that "opinions are not bond indentures." *Scandia Down Corp. v. Euroquilt, Inc.*, 772 F.2d 1423, 1427–28 (7th Cir.1985). Thus, the *McDonnell Douglas* formulation does not represent the only method by which a plaintiff may make out a claim of intentional discrimination nor was it "intended to be rigid, mechanized, or ritualistic" in application. *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978). Rather, it simply provides an orderly and efficient way to evaluate evidence of employment discrimination. *Davis v. Weidner*, 596 F.2d 726, 730 (7th Cir.1979). The ultimate question in any Title VII disparate treatment case is whether the action was founded in a discriminatory intent. *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977). As this court has stated, *"McDonnell Douglas* does not require a three-step 'judicial minuet' of procedure under which the defendant must come forward with evidence if certain facts in plaintiff's case establish a prima facie case." *Flowers v. Crouch-Walker Corp.*, 552 F.2d 1277, 1281–82 (7th Cir.1977) (citing *Sime v. Trustees of California State University and Colleges*, 526 F.2d 1112, 1114 (9th Cir.1975)). The Supreme Court has decided that "[w]here the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant." *United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 714–15, 103 S.Ct. 1478, 1481–82, 75 L.Ed.2d 403 (1983). Recently, we reiterated that it is not necessary to decide whether a plaintiff met the burden of establishing a prima facie case where the defendant has articulated a legitimate, nondiscriminatory reason for its actions. *Andre v. Bendix Corp.*, 774 F.2d 786, 792 (7th Cir.1985); *Box v. A & P Tea Co.*, 772 F.2d 1372, 1378 (7th Cir.1985).

■ Here, although the district judge did not explicitly discuss the *McDonnell Douglas* formulation, he obviously applied it. Although he did not say that the plaintiff had failed to make a prima facie showing, he stated that "[e]ven were I to hold that plaintiff demonstrated at best a prima facie

case ... the defendant was successful in showing a valid non-discriminatory reason for her dismissal." *Tulloss*, No. 81 C 5874, Memorandum Opinion and Order at 5 (N.D. Ill. Aug. 17, 1984), R. at 94. He then found that the reason for the plaintiff's discharge was her refusal to cooperate in the investigation of the allegations that she had been derelict in the performance of her teaching duties. There was certainly an adequate basis in the record for that conclusion. Defendant, through the testimony of the school's executive director, showed by clear and specific evidence that the school declined to rehire plaintiff because of her lack of cooperation and communication regarding the five disciplinary actions which conflicted with basic Montessori philosophy. We have repeatedly held that non-cooperation on the part of an employee is an adequate, legitimate reason to discharge an employee. *See Soria v. Ozinga Brothers, Inc.*, 704 F.2d 990, 997 (7th Cir.1983); *Barnes v. St. Catherine's Hospital*, 563 F.2d 324, 329 (7th Cir.1977). Thus, by a clear showing of a legitimate, nondiscriminatory reason for its action, defendant met its burden of production.

While not rigidly following the *McDonnell Douglas* formula, the district judge also adequately addressed whether the proffered reason for termination of plaintiff's employment was pretext.[4] He acknowledged that derogatory ethnic comments, like those alleged to have been made to plaintiff, may give rise to a valid Title VII claim depending on the identity of the speaker, the frequency of the comments and the employer's knowledge of them. *See* B. Schlei & P. Grossman, *Employment Discrimination* 316 (1983). However, relying on an Eighth Circuit case, *Cariddi v. Kansas City Chiefs Football Club, Inc.*, 568 F.2d 87, 88 (8th Cir. 1977), the district judge determined that the infrequent remarks uttered by co-workers regarding plaintiff did not constitute a Title VII violation. *Tulloss*, No. 81 C 5874, Memorandum Opinion and Order at 4, R. at

94. He also found that the employment situation could hardly be characterized as an ethnically-charged environment. *Id.* The plaintiff was simply unable to persuade the court that "a discriminatory reason more likely motivated the employer," or that the employer's proffered explanation was "unworthy of credence." *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095.

The ultimate factual inquiry in any Title VII disparate treatment case is whether the defendant intentionally discriminated against the plaintiff. *Aikens*, 460 U.S. at 715, 103 S.Ct. at 1482; *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095. *See also Andre v. Bendix Corp.*, 774 F.2d 786, 792 (7th Cir.1985). There is no such showing here. Rather, the school officials simply decided that because of her unwillingness to communicate with them, it was in the best interests of the school not to rehire Mrs. Tulloss.

## III. THE DISTRICT COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

Fed.R.Civ.P. 52(a) provides that, "[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses...." Trial and appellate courts should treat discrimination the same as any other ultimate question of fact. *Aikens*, 460 U.S. at 715, 103 S.Ct. at 1482. It has been held that, "[a] finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). Recently, the Supreme Court emphasized the narrow scope of appellate review of the fact-finder's decision. Stressing that an appeals court's function is not to retry the case, the Court stated that, when the finding of the

---

4. "In short, the district court must decide which party's explanation of the employer's motivation it believes." *United States Postal Service Board* *of Governors v. Aikens*, 460 U.S. 711, 715, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983).

district court is founded in "his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error." *Anderson v. City of Bessemer City*, 470 U.S. ——, ——, 105 S.Ct. 1504, 1513, 84 L.Ed.2d 518 (1985).

Here, the record shows a more than adequate basis for the decision of the district judge. Unacceptable disciplinary measures were employed by Mrs. Tulloss. Mrs. Tulloss' failure to communicate with her employer concerning these matters caused the school not to rehire her. While the course of events has been characterized differently by the parties, there is no dispute as to whether they occurred. Most of the evidence relating to the school's nonrenewal of Mrs. Tulloss' contract was in the form of testimony. The district court had the opportunity to observe the demeanor and evaluate the credibility of the witnesses—and to decide whom he believed. While it is conceivable that some of the evidence was mischaracterized or erroneously interpreted, there is no basis for a finding that the actions of the district court were clearly erroneous. It is not our function to retry the evidence. The conclusions and inferences drawn by the trial judge are wholly supported by the record. Therefore, we affirm the judgment of the district court.

AFFIRMED.