Juanita REEDER–BAKER,
Plaintiff–Appellee.

v.

LINCOLN NATIONAL CORPORATION,
Defendant–Appellant.

No. 87–1287.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 14, 1987.

Decided Dec. 8, 1987.

Rehearing and Rehearing En Banc
Denied Jan. 21, 1988.

Michael R. Maine, Baker & Daniels, Indianapolis, Ind., for defendant-appellant.

Ernest M. Beal, Jr., Parrish Knight & Beal, Ft. Wayne, Ind., for plaintiff-appellee.

Before FLAUM, EASTERBROOK, and KANNE, Circuit Judges.

FLAUM, Circuit Judge.

On August 22, 1985, Lincoln National Corporation ("Lincoln") fired Juanita Reeder–Baker ("Baker") from her job in the Production Control Unit ("P.C.U.") of its Fort Wayne, Indiana headquarters. Baker's termination was the culmination of a series of events dating back to her October, 1984 performance evaluation. When Baker's performance was rated lower than that of her white co-workers, she objected to her supervisors that Lincoln was discriminating against her because she was black. Baker reiterated her complaints; Lincoln placed her on probation, denying her the opportunity to compete for a management level position. Baker filed charges with the Equal Employment Opportunity Commission ("EEOC"). Lincoln eventually fired her following her objection to an electronic trace which Lincoln had placed on her computer terminal.

The district court found that Lincoln had discriminated against Baker in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, [1] and § 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981,[2] and awarded her over $88,000 in damages. Specifically, the district court found that Lincoln's proffered explanations for its actions were pretextual, and that Baker had shown by a preponderance of the evidence that Lincoln's real reasons for firing her were impermissible. Lincoln contends that the district court erroneously required Lincoln to prove that it did not discriminate.

We hold that the district court correctly applied the law, and because its findings are not clearly erroneous, we affirm.

## I.

### A.

Baker began work for Lincoln as a key punch operator in 1974. She rose through a variety of positions until she was promoted to Production Control Consultant in June of 1983. Her boss in the P.C.U. was Robert Ambrisco, Vice President and Director of the Data Center. Ambrisco reported to David Allen, Senior Vice President of Administration and Staff Services. In December of 1983, Baker began a three month management training assistantship with Allen. Although Baker had performed admirably in her job in the P.C.U. and possessed excellent technical skills, her performance during the assistantship was unsatisfactory.

At the conclusion of the assistantship, Allen met with Baker to discuss her performance. He told Baker that she had been disruptive and negative, and discussed objectives for her future performance in the P.C.U. The meeting was codified in a memorandum ("the Allen memo")[3] which was distributed to Henry Dill, Assistant Vice President and Director of Data Center Operations, and Larry Jackson and Mike Sprague, shift managers in the P.C.U. who

---

**1.** Section 703(a)(1) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(1) (1982), in pertinent part provides:

It shall be an unlawful employment practice for an employer ... to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race....

Section 704(a) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–3(a) (1982), in pertinent part provides:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... because he has *opposed* any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or *partici-*

*pated* in any manner in an investigation, proceeding, or hearing under this subchapter. (Emphasis added).

**2.** All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other. 42 U.S.C. § 1981 (1982).

**3.** The Allen memo describing Baker's assistantship was not made part of her personnel file until January 31, 1985, when Dill submitted it as an addendum to Baker's 1984 performance evaluation.

reported to Dill. Ambrisco, Dill's superior, was also told about the meeting.

The first of Baker's three claims of employment discrimination arose from her 1984 performance evaluation, which she received in October of 1984. The evaluation was prepared by Sprague and Jackson, and reviewed and approved by Dill. Baker was rated "high competent," one notch below the "commendable" rating given to her five white co-workers, despite the fact that the evaluation described Baker's work in the P.C.U. in positive terms and made no reference to the assistantship with Allen. Baker accordingly received a smaller merit pay increase than her co-workers.

Baker's second claim was that Lincoln placed her on probation and failed to promote her because of her opposition[4] to what she considered Lincoln's racially biased merit increase policy. Believing that race was a factor in the 1984 evaluation, Baker complained to Dill, and later to Ambrisco, that Lincoln had two different merit increase policies—"one for blacks and one for whites." In January of 1985, Baker applied, along with other Lincoln employees, for the position of Operations Manager. She informed Ambrisco that if not selected she expected a good reason, and would take action if she did not get one. Ambrisco told her not to apply due to her performance during the assistantship with Allen. On January 31, 1985, the same day that Dill placed a copy of the Allen memo in Baker's file, Dill sent Baker a letter placing her on "permanent probation" ("the probation letter"). The probation letter ordered Baker to cease disparagement of Lincoln's policies, including allegations that Lincoln treated blacks differently from whites. Dill and Ambrisco subsequently directed that Baker be removed from a list of final candidates for the Operations Manager position.

Baker's third claim related to her firing by Ambrisco. On February 12, 1985, Baker filed charges with the Fort Wayne Metropolitan Human Relations Commission ("FWMHRC") and the EEOC. On July 31, 1985, the FWMHRC found probable cause to believe that Baker's charges were meritorious. Lincoln suggested to Baker that she remain away from work during the conciliation process. On August 22, 1985, Baker returned to work to find that an electronic security trace placed on her computer terminal was impeding her ability to work.[5] Baker complained loudly and abrasively to her supervisors, in private, that the company had "screwed up" and that she would use the incident as evidence of retaliation in her lawsuit. Ambrisco was called in, talked briefly with Baker's supervisors (who recommended only that Baker be sent home) and fired Baker after a brief conversation.

### B.

The district court found for Baker on all three claims. With regard to the 1984 performance evaluation, the court found that Baker's lower rating made out a prima facie case of discrimination which was rebutted by Lincoln's proffered legitimate, non-discriminatory reason: the unsatisfactory assistantship with Allen. Lincoln's reason, however, was found to be pretextual. The finding of pretext was based on the fact that 1) the court believed Baker's testimony (and not Allen's) that Allen had assured her that the assistantship would not count for purposes of her performance evaluation;[6] 2) the evaluation made no ref-

---

4. The district court held that Baker's complaints about her performance rating constituted "opposition" within the meaning of 42 U.S.C. § 2000e–3(a). 649 F.Supp. 647, 655–56. Appellant does not contest this ruling and we do not address the issue.

5. Baker's computer terminal displayed unusual messages and would not perform ordinary tasks. 649 F.Supp. at 651. The district court found that this visible, top secret trace was put on Baker's terminal by mistake. The company

had intended to put her computer on a less intrusive "audit mode." 649 F.Supp. at 652 n. 11.

6. The district court found as a fact that Allen told Baker that the assistantship would not count for purposes of her performance evaluation. 649 F.Supp. 649 & n. 4, 654 n. 15. The district court found this fact after weighing the credibility of Allen and Baker's conflicting testimony. We will not disturb this finding.

erence to the assistantship; 3) the Allen memo was not made part of the evaluation until after Baker complained to Dill; and 4) Baker performed her P.C.U. job better than her peers.

With respect to the claim that Lincoln retaliated against Baker by placing her on probation and denying her the promotion opportunity, the court again found for Baker. Baker opposed a practice which she believed in good faith to be unlawful, and the probation memo itself stated that she was being punished for this opposition. Lincoln claimed that Baker's probation resulted from her disruption of the P.C.U. and her disparagement of the company. The court found this explanation unworthy of credence, since there was no evidence that Baker disrupted the P.C.U.[7] and because her only disparaging remarks concerned Lincoln's racial policies.

Finally, the district court ruled that Baker would not have been fired but for her participation in Title VII proceedings, since "absolutely nothing" else happened between February 1, 1985 and August 22, 1985 that could explain Baker's termination. Lincoln claimed that Baker was fired for insubordination and for violating her probation. The district court found that Baker had done nothing to violate her (unlawful) probation, that her complaints about the electronic trace were reasonable and constituted "participation"[8] in her Title VII proceedings, and that Baker was more likely than not fired when Lincoln took advantage of a situation it created in order to get rid of her.

Lincoln claims that the district court erroneously imposed a burden of persuasion

on Lincoln to show that it did not discriminate, and that the court confused its business judgment with evidence of pretext. We hold that the district court correctly applied the law, and that its findings were not clearly erroneous.

## II.

All three of Baker's claims allege violations of Title VII, and her first claim additionally alleges a violation of § 1981. The same standards govern liability on all of these claims. *See Friedel v. City of Madison*, 832 F.2d 965, 972 (7th Cir.1987); *Yarbrough v. Tower Oldsmobile, Inc.*, 789 F.2d 508, 511 (7th Cir.1986); *Ramsey v. American Air Filter Co.*, 772 F.2d 1303, 1307 (7th Cir.1985). The ultimate factual inquiry is whether the defendant intentionally discriminated against the plaintiff. *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985); *Andre v. Bendix Corp.*, 774 F.2d 786, 792 (7th Cir.1985); *Parker v. Board of School Com'rs*, 729 F.2d 524, 526 (7th Cir.1984). To facilitate this inquiry, the Supreme Court has created a three step analytical framework, *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), which this court has applied on numerous occasions. *E.g., Yowell v. United States Postal Serv.*, 810 F.2d 644 (7th Cir.1987); *Jennings v. Tinley Park School Dist.*, 796 F.2d 962 (7th Cir. 1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 1895, 95 L.Ed.2d 502 (1987); *Andre*, 774 F.2d 786. The plaintiff retains the burden

When findings are based on determinations regarding the credibility of witnesses, Rule 52(a) demands even greater deference to the trial court's findings; for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said.... [W]hen a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error.

*Anderson v. City of Bessemer City*, 470 U.S. 564, 575, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985) (citations omitted).

**7.** The only evidence of disruption proved false at trial. *See* footnote 14, *infra*.

**8.** When Baker discovered the electronic trace on her computer terminal, she was furious and confronted her supervisors in anger. Appellant does not contest the district court's finding that Baker's complaints about the trace were "participation" in Title VII proceedings for the purposes of 42 U.S.C. § 2000e–3(a). We therefore do not address this issue.

of proof throughout. She must first establish a prima facie case by raising an inference that the employer discriminated against her on the basis of her race. The employer must then come forward to rebut this inference with a legitimate, non-discriminatory reason which explains its actions. If the employer meets this burden of production, the employee must then show by a preponderance of the evidence that the employer's articulated reason is a mere pretext for unlawful discrimination.

The employee may show pretext by direct or indirect means. *See Graefenhain v. Pabst Brewing Co.*, 827 F.2d 13, 18 (7th Cir.1987). If she has direct evidence, she may persuade the trier of fact that a discriminatory reason more likely accounted for the employer's actions. Most Title VII plaintiffs are not so fortunate.[9] They must attempt to show through circumstantial evidence [10] that the employer's proffered explanation is not worthy of credence. Such a showing permits, but does not compel, an inference of discrimination. *Pollard v. Rea Magnet Wire Co.*, 824 F.2d 557, 558–59 (7th Cir.1987); *Benzies v. Illinois Dep't of Mental Health*, 810 F.2d 146, 148 (7th Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 3231, 97 L.Ed.2d 737 (1987). "The failure of an explanation to persuade the judge supports an inference that a bad reason accounts for the decision, but it is not invariably conclusive; the presence of a sufficient explanation, however, is dispositive against the plaintiff." *Benzies*, 810 F.2d at 148. The employee thus bears the burden not only of persuading the trier of fact that the employer dissembled, but also that the employer's pretextual reason hides an unlawful one. *See Pollard*, 824 F.2d at 559.

As a review of this court's Title VII decisions indicates, this is a difficult burden to meet. The employer is charged only with a burden of production: to come forward with a legitimate, non-discriminatory reason for its actions. The employer has, however, a clear incentive to persuade the trier of fact that its explanation is not only lawful but true, lest the explanation be found pretextual. *See Burdine*, 450 U.S. at 258, 101 S.Ct. at 1096.

Our review of Baker's claims is limited by Federal Rule of Civil Procedure 52(a), which constrains us to set aside the district court's findings only if clearly erroneous. This imposes a heavy burden on appellant. As the Supreme Court has stated:

> If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.

*Anderson*, 470 U.S. at 573–74, 105 S.Ct. at 1512 (citations omitted). *See Bartsh v. Northwest Airlines*, 831 F.2d 1297, 1306–1307 (7th Cir.1987); *SNACI v. Illinois Foundation Seeds, Inc.*, 830 F.2d 90 (7th Cir.1987); *Andre*, 774 F.2d at 793; *Mozee v. Jeffboat, Inc.*, 746 F.2d 365, 370 (7th Cir.1984). Judge Lee's findings, both as to the subsidiary and ultimate issues, are carefully set forth, and his reasoning is clearly evident. *See Bartsh*, 831 F.2d at 1304 (findings are adequate if they disclose

---

**9.** Proof of [intentional discrimination] is always difficult. Defendants of even minimal sophistication will neither admit discriminatory animus nor leave a paper trail demonstrating it; and because most employment decisions involve an element of discretion, alternative hypotheses (including that of simple mistake) will always be possible and often plausible. Only the very best workers are completely satisfactory, and they are not likely to be discriminated against—the cost of discrimination is too great. The law tries to protect average and even below-average workers against being treated more harshly than would be the case if they were of a different race, sex, religion, or national origin, but it has difficulty achieving this goal because it is so easy to concoct a plausible reason for not hiring, or firing, or failing to promote or denying a pay raise to, a worker who is not superlative.
*Riordan v. Kempiners*, 831 F.2d 690, 697–698 (7th Cir.1987).

**10.** *See United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714 n. 3, 103 S.Ct. 1478, 1481 n. 3, 75 L.Ed.2d 403; *Riordan*, 831 F.2d at 697; *Hearn v. R.R. Donnelly & Sons Co.*, 739 F.2d 304, 306 (7th Cir.1984).

**1378**

the steps by which the trial court reached its conclusion); *Andre,* 774 F.2d at 793.

### III.

### A.

■ On Baker's first claim, Judge Lee did not believe that Baker was rated lower than her co-workers because of her assistantship with Allen. He based his ruling on several pieces of circumstantial evidence. First, the fact that Allen told Baker that the assistantship period would not count [11] made it less likely that it was in fact considered in the evaluation. More important, the evaluation itself made no mention of the time Baker spent with Allen. Not only did this contradict common sense, the court found,[12] but also conflicted with evidence of Lincoln's practice of providing feedback to employees as an important part of the evaluation process. Further, the Allen memo was not made part of Baker's employment file until after Baker complained to Dill about her rating. This supports Baker's contention that Baker's performance during the assistantship was only an after-the-fact justification for her lower rating. Because Baker was the best employee among her peers in the P.C.U., the district court ruled, the preponderance of the evidence indicated that she was denied a "commendable" rating and commensurate pay increase for a discriminatory reason. This ruling is plausible in light of the full record, *see Anderson,* 470 U.S. at 574, 105 S.Ct. at 1512, and therefore not clearly erroneous.

Lincoln contends that like the district court in *Pollard,* Judge Lee confused bad business judgment with discriminatory animus. He did not. In *Pollard,* the defendant's management "correctly described its motivation, although its decision was based on an incorrect belief." 824 F.2d at 559. Rea's management, the trial judge found, fired Pollard because it believed Pollard was impermissibly absent from work. In fact, Pollard had a legitimate injury. We reversed because an innocent—albeit clumsy—mistake cannot constitute unlawful discrimination.

A reason honestly described but poorly founded is not a pretext, as that term is used in the law of discrimination. *See Bechold v. IGW Systems, Inc.,* 817 F.2d 1282, 1285 (7th Cir.1987) (when the employer advances a reason unrelated to a characteristic covered by the statute, the issue "becomes one of credibility in determining whether the belief is genuinely held").

*Id.* Here Judge Lee found that Lincoln's management *lied* about its real reasons for personnel actions against Baker. Regardless of whether rating Baker lower because of her assistantship or firing her for disruption would have been wise business decisions, Judge Lee did not believe Lincoln's witnesses when they asserted these business reasons.

### B.

■ The district court also disbelieved Lincoln's contention that Baker was placed on probation for disrupting the P.C.U. and for violating the Allen memo's admonishment against disparaging Lincoln. Judge Lee found that Baker did not at any time, including the day of her termination, disrupt the P.C.U. 649 F.Supp. at 649 & n. 3, 651 n. 10. Lincoln was not erroneously required, as it claims, to prove that Baker disrupted the P.C.U. It is consistent with the *Burdine* burden of production to require the employer to articulate the specific facts underlying its personnel decision. *Yowell v. United States Postal Serv.,* 810 F.2d 644, 649 (7th Cir.1987). Lincoln also had an incentive to persuade the district court that Baker was behaving disruptively and that this was the true reason for its decision to place her on probation and later to fire her. *See Burdine,* 450 U.S. at 258, 101 S.Ct. at 1096. As the district court explained,

formance, her time with Allen, would not be included in the evaluation." 649 F.Supp. at 655.

---

**11.** *See* footnote 6 *supra.*

**12.** "It simply does not make sense that Lincoln's sole negative concern over the plaintiff's per-

While it is true that the plaintiff always retains the burden of persuasion in a Title VII case, it is also true that this court (as it usually is) has been forced to decide whether it believes Lincoln's articulated reason for its action. With virtually no testimony [of disruptiveness] at trial, this court cannot hold that Baker disrupted the P.C.U.

649 F.Supp. at 658 n. 21.

As to disparagement of Lincoln, the probation memo on its face stated that Baker was being punished for her conduct in criticizing Lincoln's racial policies and for threatening to take action should she not be selected for the Operations Manager position. The district court found the evidence "overwhelming" that Lincoln retaliated against Baker for her opposition to policies which Baker believed in good faith to be discriminatory. In light of the probation memo and the district court's credibility determinations, we cannot characterize this finding as clearly erroneous.

## C.

■ On Baker's third claim, that Lincoln fired her in retaliation for her participation[13] in Title VII proceedings, the district court's finding was also not clearly erroneous. Lincoln claimed that Baker was fired for violating her probation, for displaying a negative attitude, and for disrupting the P.C.U. Dill testified that Baker had done nothing to violate her probation from February 1, 1985 to August 22, 1985. The district court found that Baker's response to the trace was reasonable, and not insubordinate, given that Baker had

been encouraged to use her superior as a "sounding board." As noted, Baker had never disrupted the P.C.U.

Judge Lee could properly conclude that Ambrisco lied about his reasons for firing Baker. Ambrisco had a history of contacts with Baker and knew of her employment disputes since the time of the performance evaluation. Lincoln had a policy of involving its Human Resources Department in any firing decisions, yet Ambrisco decided to fire Baker on the spot against the recommendations of her supervisors. Ambrisco knew Baker was suing Lincoln. He had been told by Baker's August 22 supervisors that she was threatening to "get top management" and to use evidence of the trace against the company. A survey of employees revealed that they feared Lincoln's management was prone to retaliate against employees who complained.

The district court examined all of the evidence and concluded that Baker was not fired for lack of respect for authority, creating conflict, or any reason other than that she vigorously pursued her Title VII remedies. The district court's view of the evidence is again entirely plausible.

## IV.

Lincoln was not found to have violated Title VII because of a misallocation of burdens at trial or because of unwarranted scrutiny of its business decisions.[14] Lincoln was held liable because its proffered explanations for its treatment of Baker were found unworthy of credence, and because the district court chose to accept the resulting inference that the true, unstated

---

13. *See* footnote 8 *supra.*

14. Lincoln also claims that it was denied a trial *de novo* when the district court allowed a FWMHRC investigator to testify at trial about hearsay statements and conclusions reached during her investigation. This claim is without merit.

Lincoln's Affirmative Action Administrator, Sandra Bruce, responded to Baker's charges filed with the FWMHRC and EEOC by stating that Baker had disrupted the P.C.U. to such an extent that two employees had come forward to complain. 649 F.Supp. at 651 & n. 9. The investigator, Ivy McGown, interviewed the two employees and found that they had never come

forward to complain about any disruption. McGown testified to this at trial. When confronted with McGown's testimony, Bruce admitted that her previous statement was false. *Id.*

Judge Lee "carefully considered [his] responsibility to try the case *de novo*," 649 F.Supp. at 659 n. 22, and determined that the usefulness of McGown's testimony outweighed the possibility of prejudice or delay. *See Tulloss v. Near North Montessori School,* 776 F.2d 150, 153 & n. 2 (7th Cir.1985). This finding was not an abuse of discretion. *See id.* at 153 ("the trial judge has, as a practical matter, great discretion in his treatment of" EEOC determinations).

explanations were unlawful ones. Such issues are properly resolved by the district court, which will not be reversed on appeal absent clear error.

The judgment of the district court is AFFIRMED.

EASTERBROOK, Circuit Judge, dissenting in part.

Lincoln fired Reeder–Baker after she flew into a rage on discovering a visible "trace" on her computer terminal. The district court found that Reeder–Baker "confronted her supervisors privately in a loud and abrasive manner" and that "during this confrontation Baker was hurling a computer printout in the air", 649 F.Supp. 647, 651 (N.D.Ind.1986). Lincoln recalled from the golf course Robert Ambrisco, the Director of its Data Center. Ambrisco sent for Reeder–Baker and questioned her about the incident. At trial Reeder–Baker described the encounter this way:

> When I first walked into Mr. Ambrisco's office, his first comment was, "I hear you're disrupting the harmony of the work unit again, and I want to know what you've been saying."
>
> My response was, "What have you heard?"
>
> He goes, "I said I want to know what have you been saying?"
>
> And I then responded again, "What have you heard?"
>
> His next response was, "Since you have once again disrupted the harmony of the [workplace] and have not followed the rules of your probation, you are terminated."
>
> After he told me I was terminated, I told him what I said.

The district court held that Lincoln's reliance on these undisputed events is a "pretext for discrimination", Reeder–Baker being black. If Lincoln would not have fired a white worker (or a black worker who had not earlier filed a charge of discrimination) who behaved in the same manner under the same provocation, then its stated reason is a pretext for discrimination; yet the district court's findings leave some doubt about whether that court asked and answered the right question.

The district court gave several reasons for its holding that the discharge violated Title VII. One is that Reeder–Baker did not disrupt the harmony of the work place. Some of her co-workers testified that they were able to work through the hubbub, and the judge believed them. A second is that if Reeder–Baker was disruptive, she was entitled to be so—perhaps because "Under the circumstances Baker's confrontation was reasonable" (649 F.Supp. at 651), perhaps because a person who has filed a charge of discrimination is entitled to be raucous. (The district court wrote: "This confrontation was part of her participation in Title VII proceedings." *Id.* at 660.) Still a third is that the degree of clamor and backtalk in question would not have led Lincoln to fire a white employee (or a black employee who had abstained from filing charges of discrimination). The district court observed that Reeder–Baker's immediate supervisors advised Ambrisco to send her home for the day rather than to fire her and noted that Ambrisco had violated Lincoln's rules by firing Reeder–Baker without consulting the firm's Human Relations Department.

This third reason would be sufficient to decide in Reeder–Baker's favor. We need to know why Ambrisco acted—because of race and the charge of discrimination, or because of Reeder–Baker's tantrum. If the tantrum was not a sufficient cause of the discharge, Lincoln discriminated even if the tantrum was a necessary cause. Lincoln fired Reeder–Baker for violating the terms of her probation, not (necessarily) for conduct that would be cause for discharge of an employee not on probation. The district court found that Reeder–Baker was put on probation in retaliation for filing a charge of discrimination. If the probation was an essential ingredient of the discharge—and if an employee who refrained from complaining to the EEOC would not have been on probation—then the discharge is attributable to the charge filed with the EEOC. So a judgment in Reeder–Baker's favor could be sustained.

The first two reasons, however, are mistaken, and if the judgment depends on either one, it is incorrect. Let us suppose that Ambrisco was misinformed, that Reeder–Baker had not disrupted the progress of work by staff at the computer center. This would be unimportant if Lincoln deemed the supervisors part of the work force, as it could. More, an error of fact does not imply discrimination. We dealt with the precise problem in *Pollard v. Rea Magnet Wire Co.*, 824 F.2d 557 (7th Cir.1987). Rea fired Pollard because it believed he had lied about his reason for missing work. The district court found that Pollard had been truthful and therefore concluded that the employer's reason for the discharge was a pretext. We observed (*id.* at 559):

> [A] finding [that the employer was mistaken] does not show pretext in any use of that term, which requires hiding the truth. If you honestly explain the reasons behind your decision, but the decision was ill-informed or ill-considered, your explanation is not a "pretext".... See *Bechold v. IGW Systems, Inc.*, 817 F.2d 1282, 1285 (7th Cir.1987) (when the employer advances a reason unrelated to a characteristic covered by the statute, the issue "becomes one of credibility in determining whether the belief is genuinely held" rather than whether the belief is correct)....

To the extent the district judge's conclusion about pretext depended on his belief that Ambrisco was mistaken in finding Reeder–Baker's conduct beyond the pale, the judge repeated the error of law that led us to reverse his decision in *Pollard*. (The judge's opinion in this case was written about five weeks after his opinion in *Pollard*, and well before our opinion in that case was released.) That some of Reeder–Baker's fellow workers "testified that she had not disrupted the [workplace] on the night" she was fired, 649 F.Supp. at 660, does not undercut Lincoln's case. Lincoln is not required to accept or even listen to line employees' judgment about how much commotion is too much. Ambrisco did not speak with Reeder–Baker's coworkers before firing her, and the district judge thought he should have. Title VII does not change the chain of command in a firm. If Ambrisco disdains the views of the staff when evaluating white employees, he may be equally disdainful when evaluating black employees. *Pollard* rejects the approach that may have led the district court to fault Lincoln for not using "good" methods of evaluating Reeder–Baker (as opposed to its ordinary methods). At all events, Lincoln is not liable under Title VII for Ambrisco's failure to appreciate the true state of affairs. *Pollard*, 824 F.2d at 560–61.

The district court's second reason—that the "confrontation was part of [Reeder–Baker's] participation in Title VII proceedings" (649 F.Supp. at 660)—suggests that the court believes that an employee who files a claim of discrimination is privileged to flout the employer's ordinary rules of conduct. Reeder–Baker could not be fired for punching Ambrisco in the nose, if she hit him to attract his attention to her complaint of discrimination (or if she got all worked up because of her complaint and could no longer restrain herself). Just as in labor law a union's legitimate beef about an unfair labor practice does not justify putting sand in the gears, so a worker's legitimate beef about race discrimination does not justify failure to conform to (nondiscriminatory) standards of conduct. If Reeder–Baker had gone into a funk and refused to work, Lincoln could fire her even though her sour attitude could be traced to discrimination. (Contrast *Williamson v. Handy Button Machine Co.*, 817 F.2d 1290 (7th Cir.1987), holding that if discrimination makes an employee psychologically unable to work, the employer is liable for the full consequences, including lost wages. Reeder–Baker does not contend that Lincoln's discrimination drove her over the brink in this way.) If the district judge believed, as his opinion suggests, that filing a claim of discrimination insulates otherwise unacceptable conduct—conduct that would end in the discharge of a white male who had not filed a claim—and if that belief influenced his assessment of the adequacy of Ambrisco's reasons, then

the conclusion of "pretext" needs reassessment.

That reassessment may yield a fresh conclusion of discrimination. But when a judge advances some good reasons and some bad ones—and there is a fair chance that the bad ones influenced the outcome—we ought to remand so that the judge can decide the case free of the influence of legal mistakes. *Mozee v. Jeffboat, Inc.*, 746 F.2d 365, 370 (7th Cir.1984); *Denofre v. Transportation Insurance Rating Bureau*, 532 F.2d 43, 45 (7th Cir.1976). An appellate court should not pick apart findings in search of nuances that may be criticized, but more than nuance may be awry here. The district judge might find that *Pollard* affects his appreciation of this case; we ought to give him the opportunity to review this record and reach conclusions untainted by legal misconceptions.