Joe CAMPBELL, Plaintiff–Appellant,

v.

DWYER PRODUCTS CORP.,
Defendant–Appellee.

No. 01–2134.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 30, 2002.

Decided Feb. 27, 2002.

Before MANION, DIANE P. WOOD, and EVANS, Circuit Judges.

## ORDER

After being discharged from his temporary welding position, Joe Campbell sued his former employer, Dwyer Products Corp., for racial discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981. The district court granted summary judgment for Dwyer, and we affirm.

## Background

Dwyer manufactures, among other things, kitchen sinks. Joe Campbell, who is black, applied to Dwyer for a welding position in May 1998. Although Campbell is an experienced welder, Dwyer did not call him for an interview, supposedly because of his sporadic job history. But the following month, Dwyer hired Campbell as a probationary employee through a private, temporary placement agency. He began work on June 25, 1998, and Dwyer was to review his performance after 30 days.

Campbell initially performed well. Indeed, two weeks into the 30-day period, Campbell's supervisor, Tom Kingery, commended his work, even telling two of Campbell's former co-workers that Campbell was one of the best welders he had encountered. After two or three weeks, however, problems arose. According to Kingery, he discovered that Campbell had welded sinks using wire that did not adhere to the sinks' porcelain, causing ten sinks to be scrapped. Campbell continued to use the wrong wire even though Kingery corrected him several times. Kingery said that on one of those occasions, Campbell retorted, "If you are going to complain about my welding, I will just walk right out the door."

On July 22, when the 30 days were about to expire, Kingery wrote an evaluation documenting these problems and concluding that Campbell had neither the ability nor the appropriate attitude to be a permanent welder for Dwyer. Kingery passed this evaluation on to Dwyer's director of human resources, Linda Haas. According to Haas, after receiving Kingery's evaluation, she and Kingery confronted Campbell later that day regarding another sink that Campbell allegedly had welded using the wrong wire. Campbell denied having worked on the sink but Haas said that she did not believe him because he was the only welder working on sinks during that time. Haas then passed Kingery's evaluation on to Rebecca Peck, Dwyer's director of manufacturing. On July 22, Haas and Peck made the decision that they would terminate Campbell at the end of that week.

Anticipating that Campbell's discharge would leave Dwyer with no welders, Haas and Peck called former employee Rex Mason for short-term help. Campbell worked with Mason for two days before Campbell was officially let go, and during those two

days Mason made several racist comments to him. Mason said that "a black man couldn't do the job he was doing" and once called Campbell and another black employee "niggers." Such remarks apparently were not out of character for Mason; other Dwyer employees attested to his racist attitude. One employee stated that over the past ten years he often heard Mason use racial slurs and boast about causing black employees assigned to the welding department to be fired. This employee said he complained to Kingery about Mason, but his complaints were not taken seriously.

Dwyer terminated Campbell's employment on July 24. Campbell now complains that his discharge was due to his race. He first filed a charge of race discrimination against Dwyer with the Michigan City Human Rights Commission, a local agency of the EEOC, which found probable cause to believe that Dwyer terminated Campbell because of his race. The EEOC issued Campbell a notice of right to sue. Campbell and another former employee, Lee Yarber, who was also black, filed suit against Dwyer. The case was referred to a magistrate judge, who recommended that summary judgment be granted for Dwyer because Campbell failed to produce evidence showing that Dwyer's proffered reasons for discharging him were pretextual. The district court adopted the magistrate judge's report and recommendation and granted summary judgment.[1]

## Analysis

We review a grant of summary judgment *de novo*, viewing all the facts and inferences in a light most favorable to the non-moving party. *Johnson v. Nordstrom,*

*Inc.,* 260 F.3d 727, 731 (7th Cir.2001). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

■ To survive summary judgment in a Title VII case, a plaintiff like Campbell who cannot provide direct evidence of racial discrimination may utilize the indirect burden-shifting approach enunciated by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Johnson,* 260 F.3d at 731. Using the method to establish a prima facie case, Campbell must show that: (1) he is a member of a protected class; (2) he was meeting Dwyer's legitimate expectations; (3) he was discharged; and (4) Dwyer sought a replacement for him. *See Flores v. Preferred Technical Group,* 182 F.3d 512, 515 (7th Cir.1999); *Rush v. McDonald's Corp.,* 966 F.2d 1104, 1113–14 (7th Cir.1992) (citation omitted). The parties do not dispute that Campbell satisfied the first, third, and fourth elements of the prima facie case. Dwyer, however, contends that Campbell failed to establish the second prong because (1) he could adequately perform only six of the eleven welding duties the job typically required; (2) he used the wrong wire to weld several sinks; (3) he was insubordinate when corrected; (4) he complained about having to do the grinding work that was part of his welding duties; and (5) he

---

1. The district court also granted summary judgment for Dwyer on Yarber's claims. Yarber filed a notice of appeal, and his appeal was consolidated with this one. Yarber, however, did not file a brief and did not respond

to our order directing him to show cause why his appeal should not be dismissed. *See* Cir. R. 31(c)(2). Thus, on October 9, 2001, we dismissed his appeal.

blamed others for his mistakes. In response, Campbell points to the positive feedback he received from his supervisor during the first two weeks of his employment. He also denies culpability for the mistakes and insubordinate comments that Dwyer attributed to him. And he submitted affidavits from his former co-workers in the welding department asserting that he was an exemplary welder and corroborating his claim that another employee welded the sinks that had to be scrapped. Such evidence, construed in a light most favorable to the non-moving party, is sufficient to establish the legitimate expectations element of the prima facie case. *See Rush,* 966 F.2d at 1114. We therefore conclude that Campbell at least made out a prima facie case of racial discrimination.

■ Because Campbell satisfied the prima facie case, the burden then shifts to Dwyer to articulate a legitimate, non-discriminatory reason for Campbell's discharge. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. Dwyer has articulated several such reasons, as we set forth above. Campbell rightly concedes that those reasons are facially valid ones, and because the burden to prove discrimination remains with Campbell, he must show that these reasons were a "pretext" for discrimination. *See id.* at 804, 93 S.Ct. 1817; *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 142–43, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). Pretext requires more than evidence that his employer fired him for incorrect or ill-considered reasons; Campbell must provide evidence that would enable a trier of fact to find that the employer did not honestly believe the reasons it gave for terminating him. *See Johnson,* 260 F.3d at 732. The magistrate judge concluded that Campbell's claim failed on this requirement, and we agree.

On appeal Campbell insists that his circumstantial evidence created triable issues as to whether Dwyer honestly believed its proffered reasons for his dismissal. In this regard, he relies heavily on his supervisor's positive mid-month evaluation of his work. And so, he argues, his supervisor's later change of heart must have been due to Mason's arrival, and thus race was a motivating factor behind his discharge. Campbell, however, has produced no evidence supporting this inference. The evidence showed that Mason harbored animus toward welders who were black and that Mason may have had some sway with Dwyer management when it came to hiring and firing decisions in the welding department. The relevant question, however, is whether Mason's discriminatory animus impacted Campbell's employment and the decision to terminate him. *See Dey v. Colt Constr. & Dev. Co.,* 28 F.3d 1446, 1459 (7th Cir.1994) ("[s]ummary judgment generally is improper where the plaintiff can show that an employee with discriminatory animus provided factual information or other input that may have affected the adverse employment action.").

There is no evidence showing that Mason wielded any influence or had any input in Dwyer's decision to fire Campbell. Rather, the record reflects that Haas and Peck made the decision to terminate Campbell on July 22 based on Kingery's evaluation, and that evaluation came *before* Mason arrived on July 23. Without elaboration or support from the record, Campbell suggests that Mason returned to Dwyer on July 22, which then would coincide with Kingery's negative evaluation and the decision to terminate Campbell. But this assertion is inconsistent with Campbell's own testimony that he first met Mason "either the last day I worked there or the day before," placing Mason at Dwyer on July 23 or 24, and not July 22. Given this timing, Mason's remarks, al-

though offensive, do not create a genuine issue of material fact as to pretext.

■ In another attempt to demonstrate pretext, Campbell also disputes the allegations of poor performance and attitude set forth in Kingery's evaluation. But when it comes to pretext, an employee's own self-serving assertions regarding performance are generally insufficient to create a genuine issue of material fact. *Dey*, 28 F.3d at 1460. An employee may create an issue of fact by "specifically refuting facts that allegedly support the employer's claim of performance deficiencies" because those facts demonstrate "that the employer may not have honestly relied on the identified deficiencies in making its decision." *Id.* at 1460–61. Here, Campbell does specifically refute some of Kingery's complaints: he testified that he never used the wrong wire when welding sinks; that he was not insubordinate when corrected; that no sinks had to be redone when he was the only welder; and that he was never told that sinks he worked on had to be redone.

Nonetheless, this evidence does not create a genuine issue of material fact because "[p]retext is a lie, not merely a mistake." *Jordan v. Summers*, 205 F.3d 337, 344 (7th Cir.2000). Campbell does not deny that the welding errors occurred. Rather, his evidence (his own testimony and that of his former co-workers) merely suggests that they were not his fault. We have held that "[t]he mere submission of materials from a co-worker or supervisor indicating that ... an employee's performance is satisfactory because he was not entirely responsible for several admitted mishaps, does not create an issue of material fact." *Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1125 (7th Cir.1994). That is because such evidence, although raising some legitimate questions regarding the quality of Campbell's work, "does not shed any light on whether [Dwyer]

honestly based its employment decision on performance-related considerations." *Dey*, 28 F.3d at 1460. There is no evidence to show that Haas and Peck–the decision-makers here–had reason to question the veracity of Kingery's evaluation. Nor did Campbell present evidence showing that Haas or Peck harbored any racial animus towards him. Although Campbell contends that he was singled out for blame because he is black, he has not introduced any evidence to support that contention. Thus, we conclude that summary judgment was appropriate here.

■ Finally, Campbell argues that the Michigan City Human Rights Commission's finding of probable cause and evidence from its file created genuine issues of material fact precluding summary judgment. This argument also is unavailing. Proceedings before the Commission are nonbinding and nonadjudicative. *See Tulloss v. Near North Montessori Sch., Inc.*, 776 F.2d 150, 152 (7th Cir.1985). We have therefore held that the district court has "great discretion" in deciding how much weight, if any, to give to a probable cause determination. *Id.* at 153; *Halloway v. Milwaukee County*, 180 F.3d 820, 827 n. 9 (7th Cir.1999). Likewise, the district court has wide latitude in deciding whether to admit the Commission's file–which often contains a "mish-mash of self-serving and hearsay statements and records"–and if admitted, how much weight to give those records. *Tulloss*, 776 F.2d at 154 (citation omitted). Here, the magistrate judge considered the file but concluded that the records therein were of "minimal probative value and relevancy" and did nothing to establish Campbell's claim "that Dwyer discriminated against [him]." On appeal Campbell does not point to anything specific from the file that might support his case, and upon our review of the file, we

concur with the magistrate judge's assessment.

AFFIRMED