Charles BROM, Plaintiff,

v.

BOZELL, JACOBS, KENYON & ECKHARDT, INC. and Bozell, Inc., Defendants.

No. 89 C 7021.

United States District Court, N.D. Illinois, Eastern Division.

Oct. 25, 1994.

Jac A. Cotiguala, Cotiguala & Mennes, Kathleen B. Baliunas, Chicago, IL, for plaintiff.

Alan Francis Curley, Robinson, Curley & Clayton, P.C., Chicago, IL, David Barry Kahn, David B. Kahn & Associates, Ltd., Northfield, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

Plaintiff Charles Brom ("Brom") sues defendants Bozell, Jacobs, Kenyon & Eckhardt, Inc. and Bozell, Inc. (collectively "defendants" or "Bozell") for age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* An amended final pretrial order in this case was filed on August 12, 1994. Trial is set for November 7, 1994. The parties' motions *in limine* are presently before the court as is defendants' motion for bifurcation.[1] The court shall first address defendants' motion for bifurcation and then shall address the motions *in limine.*

---

1. This case was originally assigned to Judge Zagel's calendar. By order of the Executive Committee, it was reassigned to this court's calendar

*Defendants' Motion for Bifurcation*

Pursuant to Federal Rule of Civil Procedure 42(b), defendants move to bifurcate the liability and damages phases of the trial. Defendants contend that bifurcation is warranted in the instant case for several reasons: (1) Bifurcation would avoid unduly prejudicing or confusing the jury by presenting evidence of Brom's decade long unsuccessful efforts at finding reemployment; (2) Brom's evidence relating to his damages— namely expert testimony regarding his projected growth in earnings, replacement earnings, benefit losses and tax effects—are distinct from his evidence relating to liability; and (3) Bifurcation is appropriate because the damages issue is itself bifurcated, with the jury determining back pay, if any, and the court determining the appropriateness of reinstatement or front pay in lieu of reinstatement.

Rule 42(b) permits bifurcation of any issues for separate trial where such separation is "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." *MCI Communications Corp. v. American Telephone & Telegraph Co.,* 708 F.2d 1081, 1166 (7th Cir.), *cert. denied,* 464 U.S. 891, 104 S.Ct. 234, 78 L.Ed.2d 226 (1983). Only one of these criteria need be met to justify bifurcation. *Id.* The decision to bifurcate the issues of liability and damages for separate trials is committed to the sound discretion of the trial court. *Davis v. Freels,* 583 F.2d 337, 343 (7th Cir.1978); *Keyes Fibre Co. v. Packaging Corp. of America,* 763 F.Supp. 374, 375 (N.D.Ill.1991).

The court is persuaded that bifurcation of the liability and damages phases will best serve the goal of an efficient and expedient trial. Brom seeks a back pay award of well over one-million dollars. This figure covers Brom's back pay for a period spanning approximately nine years and three months. Brom expects to present expert testimony on the amount of back wages to which he is due. Defendants argue that Brom's million dollar back pay claim is gross-

---

effective May 25, 1994. In the name of judicial economy, this opinion presumes familiarity with the facts.

ly exaggerated as a result of incorrect and unreasonable assumptions made by Brom's expert. Defendants also contend that Brom failed to mitigate his damages. Finally, defendants contend that Brom's successor was terminated within days after a client—the sole account on which Brom had worked—withdrew its business from Bozell; and, defendants argue that, even if he had not been previously terminated, Brom would have been terminated at or about the same time that his replacement was terminated—January 13, 1989. Accordingly, defendants contend that Brom's back pay award, if any, should only be calculated from the date of his termination to January 13, 1989.[2] *See* Amended Final Pretrial Order, Ex. I, Defendants' Trial Brief at 14–15. Defendants, like Brom, expect to present expert testimony regarding damages. Indeed, both sides in this case expect to call experts who will testify solely with respect to the issue of the proper damages to be awarded.

It is clear to this court that the damages issues in this case are hotly contested. It appears that the damages evidence will involve relatively extensive testimony on Brom's efforts at finding reemployment over the past nine years, how long Brom would have remained employed by Bozell in light of the loss of his sole account, and such interminable issues as the proper amounts to be awarded for Brom's stock bonus plan, profit sharing and savings, executive wealth accumulation, and other fringe benefits. Moreover, the evidence pertaining to damages appears to be wholly independent of the evidence pertaining to liability. Under these circumstances, the court finds that judicial economy will be best-served by allowing the jury to determine the liability issue before presenting them with the damages evidence.

In the event that the jury finds the defendants not guilty of violating the ADEA, bifurcation will have resulted in a substantial savings of time by avoiding the needless presentation of extensive testimony on damages. And, even if the jury finds the defendants to be liable, the court expects that bifurcation will result in savings insofar as the deliberations regarding liability will not be sidetracked by extraneous and potentially confusing evidence relating to Brom's damages.[3] Accordingly, the court grants defendants' motion to bifurcate the liability and damages phases of this trial, with the understanding that the damages phase will begin immediately, before the same jury, if Brom succeeds in establishing liability.

*Motions In Limine*

■ Federal district courts have the power to exclude evidence *in limine* pursuant to their authority to manage trials. *Luce v. United States,* 469 U.S. 38, 41 n. 4, 105 S.Ct. 460, 463 n. 4, 83 L.Ed.2d 443 (1984). Guidelines governing motions *in limine* were recently set forth in *Hawthorne Partners v. AT & T Technologies, Inc.,* 831 F.Supp. 1398 (N.D.Ill.1993), as follows:

> This court has the power to exclude evidence *in limine* only when evidence is clearly inadmissible on all potential grounds. Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context. Denial of a motion *in limine* does not necessarily mean that all evidence contemplated by the motion will be admitted at trial. Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be

---

2. The question of how long Brom would have remained employed at Bozell is one of fact for the jury to decide based on the evidence presented at trial and guided by a proper instruction from the court.

3. Because the court finds that bifurcation is conducive to expedition and economy, it need not pass judgment on defendants' argument that a single trial would unfairly prejudice them. We note, nevertheless, that the court is unpersuaded that evidence of an advertising executive's decade-long, unsuccessful efforts at finding employ-

ment (and his two million dollar claim for damages) is the sort of evidence that poses a substantial danger of evoking improper juror sympathy. This type of potential liability is not different from that faced by many defendants who proceed to trial in this courthouse. In the same vein, plaintiff's argument that bifurcation prejudices him solely based on somewhat questionable statistical evidence that defendants prevail more frequently in bifurcated trials, stretches the meaning of the term prejudice beyond its reasonable limits.

excluded. The court will entertain objections on individual proffers as they arise at trial, even though the proffer falls within the scope of a denied motion *in limine*. *Id.* at 1400–01. With these guidelines in mind, we turn to the motions before the court.

*Brom's Motion* in Limine *To Exclude Expert Witness Testimony*

Brom moves *in limine* to exclude certain testimony by defendants' expert witness on damages, Louis J. Perl, and to exclude certain exhibits relating to that testimony.[4] Although the bifurcation order does not allow this disputed testimony to be introduced during the initial liability trial, the court will address this issue to allow for an efficient transition to the possible damages portion of the trial.

In brief, Brom seeks to exclude Perl's testimony and exhibits because they are based on "improper assumptions drawn from inappropriate statistical sources." Pl.'s Mtn. at 1.

■ Brom attacks sections IV and V(3)[5] of the Report because they are based on "speculative assumptions supported only by generalized survey data," Pl.'s Mtn. at 2, and he attacks section II "because of the unreliability and generalized nature of the survey data upon which it is based." *Id.* at 5. Section IV of the Report sets out Perl's analysis of the amount by which Brom's damages, if any, should be offset by replacement earnings that Brom would have collected had he attempted reasonably to mitigate his damages. In reaching his conclusions, Perl relied on data from the U.S. Census Bureau's Displaced Worker Survey which indicate that the majority of displaced workers in Brom's age category find jobs within two years and replace 80–85% of their earnings. *See* Report at 3. Section V(3) of the Report addresses Brom's entitlement to lost benefits and is based, in part, on an assumption—

derived from the Displaced Worker Survey relied upon in section IV—that Brom should have been able to find reemployment that would have replaced the benefits he received from Bozell. Brom contends that such reliance on national survey data is misplaced and that the analysis of whether he has failed to mitigate his damages must be based on a particularized analysis of his efforts to find reemployment. It is plain that these attacks speak to the weight of the Perl evidence not its admissibility. Brom will have ample opportunity to discredit Perl's methods and assumptions on cross-examination. For purposes of deciding the pending motions, the court finds the Perl evidence to be relevant and that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. Accordingly, Brom's motion with respect to these sections must be denied.

■ Brom also seeks to exclude section II of the Report which addresses Brom's expected work life. In contrast to Brom's expert who assumed that Brom would continue to work until age 65, Perl relied upon a U.S. Department of Labor work life table and arrived at an expected retirement age of approximately 62.5. Brom challenges Perl's reliance on the work life table. Again, Brom's challenge speaks to the weight of the Perl evidence not its admissibility. The appropriateness of relying on the Department of Labor's work life tables for estimating retirement age is a matter that can be thoroughly explored on cross-examination. The court finds the evidence relevant and finds that its probative value is not substantially outweighed by the danger of unfair prejudice. Accordingly, Brom's motion with respect to section II must be denied.

■ Finally, Brom seeks to exclude testimony and other evidence relating to section VI of the Perl Report—entitled "Tax Ef-

---

4. In particular, Perl has prepared a report (the "Report") on Brom's Damages, which defendants have listed as an exhibit in the Amended Final Pretrial Order, and Brom seeks to exclude certain portions of the Report.

5. In the copy of the Perl Report accompanying Brom's motion, the fifth and sixth sections of the

Report are both captioned with the roman numeral V. It is actually the sixth section of the report, entitled "Benefit Losses," that Brom challenges. Nevertheless, for purposes of consistency with Brom's motion, the court shall refer to the challenged section as "V(3)."

fects."[6] Section VI purports to estimate Brom's "after-tax losses" based on the assumption that damage awards under the ADEA are not taxable. However, in *Burns v. Commissioner*, 33 F.3d 836 (7th Cir.1994), the Seventh Circuit recently held·that damage awards under the ADEA *are* taxable. *Id.*, 33 F.3d at 838. Accordingly, section VI of the Perl Report is wholly irrelevant and the court grants Brom's motion insofar as it speaks to section VI. All testimony or other evidence pertaining to Section VI of the Perl Report shall be excluded.

### Brom's Motion in Limine *To Exclude IDHR Investigation Report*

Brom moves *in limine* to exclude the Illinois Department of Human Rights ("IDHR") investigation report which was issued after Brom filed a charge of discrimination with the IDHR. Brom contends that the report lacks sufficient indicia of trustworthiness necessary for admission under the "Public Records and Reports" exception to the hearsay rule, FED.R.EVID. 803(8)(C), and that the probative value of the IDHR Report is substantially outweighed by the danger of unfair prejudice.

■■■ Trial courts have broad discretion when ruling on the admissibility of administrative findings regarding claims of discrimination. *Tulloss v. Near North Montessori School, Inc.*, 776 F.2d 150, 153 (7th Cir.1985). "[A]dministrative findings regarding claims of discrimination are generally admissible under Fed.R.Evid. 803(8)(C) (the public records and investigatory file exception to the hearsay rule)." *Id.* However, such evidence may be excluded·where the circumstances indicate lack of trustworthiness or where the prejudicial effect of the evidence substantially outweighs its probative value. *Id.*

■■ This court agrees with the trial court in *Tulloss* that presenting the administrative *findings* with respect to plaintiff's charge of discrimination is "tantamount to saying 'this has already been decided and here is the decision,'" *Tulloss* 776 F.2d at 154 (quoting the district court's opinion); thus, the court finds that the prejudicial effect of presenting such findings substantially outweighs their probative value. Accordingly, the "Conclusion" section of the IDHR Investigation Report will be excluded from evidence at trial.

■■ The court denies Brom's motion with respect to the remainder of the IDHR Investigation Report. The court finds the report to be admissible under Rule 803(8)(C). Furthermore, Brom has not made an adequate showing to establish that the Report is inherently unreliable or lacks trustworthiness. Although the court is not unmindful of the fact that the IDHR investigations are relatively informal, do not permit cross-examination *per se*, and may involve *ex parte* interviews, the court cannot say that these facts— in the absence of any other evidence suggesting unreliability or lack of trustworthiness— compel the conclusion that such investigations are inherently unreliable. If the court were to accept the factors identified by Brom as *sufficient* to exclude IDHR investigation reports, the court would be pronouncing IDHR investigations—and many other administrative investigations—to be inherently unreliable; this the court is unwilling to do. *Some* showing beyond Brom's dissatisfaction with the investigator's findings must be made in order to establish unreliability or the lack of trustworthiness.[7]

■■ Although the court finds the IDHR Investigation Report to be admissible uncer Rule 803(8)(C), its probative value is somewhat marginal. Thus, pursuant to Fed. R.Evid. 403, in order to minimize the potential for confusion and prejudice, as well as to

---

6. Due to a typographical error, "section VI" of the Report is actually the seventh section of the Report. *See supra* note 3. Again, for the purpose of maintaining consistency, the court shall refer to the "Tax Effects" section as "section VI."

7. Brom suggests that the unreliability of the IDHR Report is evidenced by the investigator's failure "to consider or obtain evidence of numerous age-biased comments made by decision-mak-

ers." Pl.'s Mtn. at 3. Conspicuously absent from Brom's motion, however, is an affirmative statement that Brom ever volunteered information, concerning age-biased comments to the IDHR investigator. Brom cannot hold back pertinent information and then criticize the investigator for failing to probe deep enough to elicit the information.

promote efficiency of trial, the court will limit the use of the Investigation Report to purposes of impeachment. The Investigation Report may not be introduced by any party as part of their case-in-chief except with respect to party admissions.

*Brom's Motion* in Limine *To Exclude O'Meara Memoranda*

■ Brom moves *in limine* to exclude certain memoranda authored by Norton O'Meara, who was Brom's immediate supervisor. Initially, Brom moved to exclude three memoranda (defendants' exhibits 10–12); however, Brom has withdrawn his motion as to defendants' exhibits 10 and 11. Accordingly, all that remains is consideration of Brom's motion to exclude defendants' exhibit 12 which is a memorandum drafted by O'Meara approximately five months after Brom was terminated and which was drafted expressly as O'Meara's "attempt to mitigate the charges Mr. Charles Brom has leveled at the agency with respect to the circumstances surrounding his dismissal." Defs.' Ex. 12. Brom moves to exclude this memorandum contending that the document does not fall within the so-called business records exception to the hearsay rule. FED.R.EVID. 803(6). Defendants concede that the memorandum is not admissible as a Rule 803(6) "business record," but contend that the memorandum may be admitted and read into evidence, pursuant to Rule 803(5), as a "recorded recollection" in the event that O'Meara has insufficient recollection to testify fully and accurately at trial. The court finds that this memorandum, written approximately five months after Brom was terminated—and for the express purpose of expressing "[m]anagement's perspective" in the face of an impending investigation by the Illinois Department of Human Rights—does not constitute a "memorandum ... made or adopted by the witness when the matter was fresh in the witness' memory." FED.R.EVID. 803(5). Accordingly, Brom's motion to exclude defendants' exhibit 12 is granted.

*Defendants' Motion in Limine To Exclude Anticipated Testimony*

Defendants move *in limine* to exclude the anticipated testimony of two Bozell employees. The first of the two challenged statements was allegedly made by Wayne Fickinger, a Vice Chairman of Bozell, approximately five to six months before Brom was terminated. Brom contends that Fickinger stated, "after you have worked an account like Beam for a long time, people feel that they want younger people on the account." Complaint ¶ 16. The second statement was allegedly made by Norton O'Meara, Brom's immediate supervisor, who stated "after a while, a client wants younger people on the account."

Defendants argue that any testimony as to these two comments would involve double hearsay inadmissible under Fed.R.Evid. 802 and 805. Defendants contend that the first level of hearsay consists of the witness's testimony that the statements were made and the second level of hearsay involves the statements allegedly made by Fickinger and O'Meara concerning statements by some other person to the effect that they wanted younger people on the account.

■ At the outset, we disagree with defendants that the anticipated testimony involves double hearsay. There can be no question that the anticipated testimony involves the first level of hearsay. However, as defendants correctly observe, O'Meara's and Fickinger's statements would be admissible as party admissions if these two individuals were involved in the decision to discharge Brom. *See Shager v. Upjohn Co.,* 913 F.2d 398, 402 (7th Cir.1990). The issue of whether O'Meara or Fickinger were sufficiently involved in the ultimate decision to discharge Brom is hotly contested by the parties and the issue can only be resolved based upon consideration of the evidence presented at trial. Because it is entirely possible that Brom may succeed in establishing that O'Meara and Fickinger were sufficiently involved in the decision to terminate him, the court cannot conclude—on the present record—that the challenged testimony is clearly inadmissible as a "party admission." FED. R.EVID. 801(d)(2).

■ The court's central disagreement with defendants' position is with respect to whether the challenged testimony contains a

second level of hearsay. The court cannot conclude that Fickinger's alleged statement, "after you have worked an account like Beam for a long time, people feel that they want younger people on the account," or O'Meara's alleged statement, "after a while, a client wants younger people on the account," amount to reports or reiterations of what some other declarant previously stated. Rather, the court understands these statements as expressions by Fickinger and O'Meara as to what they believe "people" or "client[s]" generically want. If Fickinger or O'Meara had stated, "Often, a man feels that a man has to do what a man has to do," no one would seriously contend that this is a report or reiteration of a previous statement by a man that "a man has to do what a man has to do." Rather it is a general expression of the speaker's understanding of the philosophical outlook of others. In the same vein, Fickinger's and O'Meara's statements are readily understood as general expression's of their perspective on what other people want. The fact that Fickinger and O'Meara used unidentified and ambiguous referential nouns such as "people" and "a client" lends further support, under the circumstances, to the conclusion that they were not purporting to reiterate the statements of some specific other declarant. In view of the court's understanding of the challenged testimony as being offered not to prove the truth of the matter asserted (namely, that "people" or "a client" feel they want younger people on an account) but rather is being asserted to prove the state of mind of the decision-makers, the court finds no second level of hearsay in the challenged testimony.[8] Thus, provided that Brom can establish the requisite foundation that Fickinger and O'Meara were, in fact, sufficiently involved in the discharge decision, the court cannot conclude that the challenged testimony is "clearly inadmissible" as double hearsay.

■ Nor can the court conclude, on the present record, that the probative value of the challenged testimony is substantially outweighed by the danger of unfair prejudice to defendants. While it is certainly true that stray remarks in the workplace, which are not relatively contemporaneous with an adverse employment action and which are not reasonably related to the action, have been found to be of little probative value in ascertaining discriminatory intent with respect to that action, see, e.g., Hong v. Children's Memorial Hosp., 993 F.2d 1257 (7th Cir.1993), cert. denied, —— U.S. ——, 114 S.Ct. 1372, 128 L.Ed.2d 48 (1994); Rush v. McDonald's Corp., 966 F.2d 1104, 1116 (7th Cir.1992); McCarthy v. Kemper Life Ins. Cos., 924 F.2d 683, 686–87 (7th Cir.1991), the court cannot conclude that the challenged remarks fall within the ambit of the "stray remark" case-law. In the first instance, the challenged statements were not simply remarks reflecting a general antipathy towards members of the protected class and bearing no relation to a personnel action; rather, the remarks can readily be interpreted as relating directly to Fickinger's and O'Meara's perception of appropriate staffing decisions. Indeed, the relationship of the statements to Brom's termination is relatively straightforward: Fickinger and O'Meara expressed their perception as to the fact that others may feel that a younger person is needed for the job, and shortly thereafter Brom was replaced by a younger person. Cf. Tibbitts v. Van Den

---

**8.** The court respectfully declines defendants' invitation to follow *Carden v. Westinghouse Elec. Corp.,* 850 F.2d 996 (3d Cir.1988). In *Carden,* the Third Circuit construed testimony concerning a statement very similar to Fickinger's and O'Meara's statement as involving double hearsay. The plaintiff in *Carden* asked his immediate supervisor why he did not get a certain position. In response the supervisor said "he *thought* they wanted a younger person for the job." *Id.* at 998 (emphasis added). In construing this statement, the court seized on the fact that the ·supervisor used the word "they" and reasoned "it is evident that someone ... said something to [the supervisor] which he, [the supervisor], in turn repeated to [the plaintiff]." *Id.* at 1002. Elsewhere, the court stated that the fact that the supervisor used the word "they" "clearly indicates that someone ... other than [the supervisor] wanted a younger person." *Id.* While this court does not find the use of the word "they" as conclusive as the Third Circuit, we note, in addition, that, in the case at bar, the statements at issue used referents (*e.g.,* "people" and "a client") that do not point as strongly as the referent "they" to a particular other or others. Moreover, we further note that the Third Circuit inexplicably ignored the fact that the supervisor's statement was expressly a statement of his thoughts as to what others wanted.

*Bergh Foods Co.,* 857 F.Supp. 1249, 1255 (N.D.Ill.1994). Second, the court cannot conclude that the period of five to six months between Fickinger's statement and Brom's termination[9] renders the statement so non-contemporaneous as to substantially diminish the probative value of the remark.[10] Thus on the present record the court cannot conclude that the probative value of Fickinger's and O'Meara's statements are substantially outweighed by the danger of unfair prejudice.

Accordingly, defendants' motion *in limine* to exclude anticipated testimony regarding the statements allegedly made by Fickinger and O'Meara must be denied.

■ Defendants also move *in limine* to exclude anticipated testimony regarding certain statements allegedly made by Lane Barnett, Jim Beam's Vice President of Marketing and Advertising that purportedly evidence age-based animus. Defendants contend that no evidence in the record suggests that Barnett made any such statements to any representative of Bozell. In response, Brom makes no effort to suggest that the challenged statements were, in fact, made to Bozell representatives. Instead, he appears to argue simply that the fact that Fickinger and O'Meara made their alleged statements reveals that Bozell adopted the age animus of Barnett and Jim Beam. Pl.'s Resp. at 5–6. However, the mere fact that Fickinger and O'Meara allegedly made statements echoing the same sentiment as Barnett is entirely insufficient to establish that the former "adopted" the latter's alleged age animus.

Because Barnett was not a decision maker with respect to defendants' decision to terminate Brom; and, because the record offers no basis upon which to conclude that Bar-

nett's alleged comments constitute adopted admissions by defendants under Rule 801(d)(2)(B), the court concludes that the anticipated testimony concerning Barnett's alleged statements is inadmissible hearsay. Accordingly, defendants' motion *in limine* to exclude testimony concerning the statements identified in their motion allegedly made by Barnett is granted.

### Defendants' Motion in Limine To Exclude Exhibits

Defendants move *in limine* to exclude certain trial exhibits identified by Brom in the Amended Final Pretrial Order. Defendants roughly categorize the challenged exhibits into six categories: "(1) a group of exhibits predating the hiring of Lane Barnett by Beam in December of 1984;[11] (2) a group of memoranda and other documents pertaining to an advertising project for a product called 'Jim Beam and Cola';[12] (3) documents pertaining to Beam's sales;[13] (4) a series of Bozell and/or Beam meeting agendas or invitations;[14] (5) various research reports and proposals;[15] and (6) a group of proposals, reports correspondence, memoranda and budgets for various projects pertaining to the Beam account.[16]" Defs.' Mtn. at 2–3. Defendants contend that the challenged exhibits are irrelevant and, to the extent that they are relevant, their probative value is substantially outweighed by the danger of undue prejudice.

■ The Federal Rules of Evidence define "relevant evidence" very broadly as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. All rele-

---

**9.** Significantly, the court cannot determine when the *decision* to terminate Brom was made. It is not unreasonable to assume that the *decision* was made at some earlier date than the day of the actual discharge. Thus, the period of time between the alleged statement and the decision may even be less than five to six months.

**10.** The evidence before the court suggests that O'Meara's alleged statement was made shortly after Fickinger's alleged statement. Niebling Dep. at 61, 62.

**11.** Exhs. 3–7, 9, 11–12, 40, 78.

**12.** Exhs. 38–39, 43–44, 46, 48, 50, 56–59, 61–62, 66, 68–71, 87, 94, 96–97, 100, 104.

**13.** Exhs. 35 and 36.

**14.** Exhs. 41, 42, 55, 78 and 85.

**15.** Exhs. 73, 77, 79, 80, 84, 96, 101.

**16.** Exhs. 13, 47–51, 53–54, 58, 60–65, 67, 70, 72, 74–76, 81–83, 86, 88–93, 95, 98, 99, 102, 103, 106.

vant evidence is admissible unless "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." FED.R.EVID. 402, 403. Any party that seeks to exclude evidence on relevancy grounds by way of a pretrial motion *in limine* faces an exceptionally high obstacle.

The court finds defendants' arguments as to the challenged exhibits' lack of relevance unpersuasive. To the extent, limited or not, that the challenged exhibits tend to make the fact that Brom was meeting Bozell's legitimate expectations more or less probable, the evidence is relevant. Similarly, to the extent, limited or not, that the challenged exhibits tend to make the fact that Bozell's nondiscriminatory justification for terminating Brom is pretext more or less probable, the evidence is relevant. The issue of whether the probative value of the challenged exhibits is substantially outweighed by the danger of unfair prejudice cannot be determined at this stage of the proceedings without the benefit of context provided by the evidence presented at trial. Therefore, defendants' motion to exclude exhibits is denied.

### CONCLUSION

Defendants' motion for bifurcation of the liability and damages phases of the trial [140–1] is granted. Brom's motion *in limine* to exclude defendants' expert witness damage calculations [132–1] is granted as to the "Tax Effects" section of the expert's report and is denied in all other respects. Brom's motion *in limine* to exclude the IDHR investigation report [133–1] is granted in part and denied in part: The conclusion section of the IDHR Report shall be excluded and use of the remainder of the Report shall be limited to impeachment; no party shall introduce the Report as part of their case-in-chief except with respect to party admissions. Brom's motion *in limine* to exclude the O'Meara memoranda [134–1] is granted with respect to O'Meara's December 9, 1985 memorandum and is denied in all other respects. Defendants' motion *in limine* to exclude anticipat-

ed testimony [135–1] is denied in part and granted in part: The motion is denied as to statements made by Fickinger and O'Meara; the motion is granted with respect to statements made by Barnett. Defendants' motion *in limine* to exclude exhibits [137–1] is denied.