**Joseph D. SPRUILL, Sr., Plaintiff,**

v.

**WINNER FORD OF DOVER, LTD., a Delaware corporation, Winner Imports of Dover, Inc., and Winner Hyundai, Inc., Defendants.**

**Civ. A. No. 94–685 MMS.**

United States District Court, D. Delaware.

Aug. 14, 1997.

Richard R. Weir, Jr., Wilmington, DE, for plaintiff.

Donald E. Reid and Andrea L. Rocanelli, Morris, Nichols, Arsht & Tunnell, Wilmington, DE, for defendants.

## *OPINION*

MURRAY M. SCHWARTZ, Senior District Judge.

### I.  Introduction

Joseph D. Spruill, Sr. ("Spruill") filed a complaint against Winner Ford of Dover, Ltd., Winner Imports of Dover, Inc. and Winner Hyundai, Inc. (collectively "Winner" or "defendants"), claiming race discrimination in employment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981.[1] Jurisdiction is proper under 42 U.S.C. § 2000e–5(f)(3) and 28 U.S.C. §§ 1331 and 1343. Before the Court are pre-trial motions in limine filed by both parties.

### II.  Facts

Spruill began work for Winner Ford of Dover in January 1992 as a sales representative.  D.I. 1 ¶ 10.  He alleges he was subject to a racially hostile work environment culminating in his constructive discharge in May 1993.  *Id.* Spruill, who is African American, asserts Steven Snyder, Winner's Business Manager in the Finance and Insurance Department, repeatedly made racial slurs toward him, including calling him "chocolate" and "nigger." *Id.* ¶ 16.  Snyder further is claimed to have stated to Spruill, "kiss my hand and say white man is God," and "tell your big lipped sister to suck my d____," among other things. *Id.* Snyder further made negative comments about Spruill's marriage to a woman who is white. *Id.* Other managers at Winner are alleged to have participated in the racial harassment of Spruill as well; these managers included Roger Wollaston, who was general manager at Winner until January 1993, and Frank Fitzwater, who took Wollaston's place. *Id.*

---

1.  Spruill's lawsuit originally named The Winner Group and Winner Group Management, Inc., as defendants and did not name Winner Imports of Dover, Inc. and Winner Hyundai, Inc. The latter two defendants were added, and the former two dismissed, pursuant to a stipulation among the parties.  *See* Docket Item ("D.I.") 47.

196

Following his resignation, Spruill filed charges with the Delaware Department of Labor ("DDOL") and the Equal Employment Opportunity Commission ("EEOC"). Spruill subsequently received a determination from the DDOL of reasonable cause to believe he was discriminated against on the basis of his race, and a Notice of Right to Sue from the EEOC. D.I. 1, Exh. A, B.

### III. Motions in Limine

The Third Circuit Court of Appeals has approved of pre-trial motions in limine as a method of "narrow[ing] the evidentiary issues for trial and ... eliminat[ing] unnecessary trial interruptions." *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir.1990). In this case, the parties have raised a number of issues for pre-trial resolution: (1) the admissibility of the DDOL determination; (2) Winner's liability for the actions of its "middle managers;" (3) the admissibility of evidence of discrimination against other employees—before, during and after Spruill's employment at Winner; (4) the admissibility of a letter written by Spruill's attorney in response to an offer of reinstatement by Winner; (5) the addition of certain witnesses to the pre-trial order and (6) the production of certain witness statements. These issues will be considered separately below.

### A. DDOL Determination

Spruill seeks to admit the DDOL determination in its entirety, including factual findings as well as conclusions and opinions. D.I. 75, at 12. Winner's opposition is twofold. First, Winner asserts, the document is hearsay, and does not fall within the exception permitted by Federal Rule of Evidence 803(8)(C). Second, Winner urges the document is inadmissible under Federal Rule of Evidence 403; because it purported to analyze the issue under state law, the prejudicial effect of the findings outweighs the probative value.

As noted, Winner's first objection is governed by Rule 803(8)(C), which presents an exception to the hearsay rule. Unless the DDOL findings fall under such an exception, they are inadmissible, as they are out of

court statements to be introduced for the truth of the matter asserted therein. *See* Fed.R.Evid. 801. Rule 803(8) provides an exception to the hearsay rule, however, for:

> Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth ... (C) in civil actions ... factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

The Supreme Court has interpreted Rule 803(8)(C) to authorize admission of opinions and conclusions as well as factual determinations, contingent upon trustworthiness as well as the general considerations for admissibility such as relevance and prejudice. *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 109 S.Ct. 439, 102 L.Ed.2d 445 (1988). *Beech* is not directly applicable, however; it concerned a report which opined as to the cause of an airplane crash, and the Court specifically reserved the question whether *legal* conclusions would be admissible under Rule 803(8)(C). *Id.* at 170 n. 13, 109 S.Ct. at 450 n. 13.

The federal circuit courts of appeals have not treated uniformly the issue of the admissibility of EEOC findings and their state counterparts, *see Johnson v. Yellow Freight Sys., Inc.*, 734 F.2d 1304, 1309 (8th Cir.1984) (citing cases). One view is such findings are *per se* admissible, while other courts reserve the decision on admissibility to the discretion of the trial judge. *Id.* The Third Circuit Court of Appeals falls within the latter category. *Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1099 n. 12 (3d Cir.1995); *see also Walton v. Eaton Corp.*, 563 F.2d 66 (3d Cir.1977).

White the opinions of the Third Circuit Court of Appeals have not been expansive as to the various grounds for admitting or excluding the reports, opinions from other circuits indicate—as is suggested by the Supreme Court and the rule—that indicia of trustworthiness should guide the determination. *See, e.g., Johnson*, 734 F.2d at 1309; *Abrams v. Lightolier, Inc.*, 702 F.Supp. 509, 512 (D.N.J.1989). However, the Eighth Circuit Court of Appeals in *Johnson* also noted

such reports could be ruled inadmissible for several other reasons:

> The trial judge correctly may perceive a danger of unfair prejudice to the defendant or properly may consider that time spent by the defendant in exposing the weaknesses of the EEOC report would add unduly to the length of the trial. Moreover, the trial judge properly may give weight to the hearsay nature of the EEOC report and to the inability of the defendant to cross-examine the report in the same way that a party can cross-examine an adverse witness.

734 F.2d at 1309.

Finally, several courts have distinguished between factual findings on the one hand, and opinions and conclusions contained in these reports on the other hand, and have admitted the former and excluded the latter. *See Starceski,* 54 F.3d at 1099 n. 12 (holding not abuse of discretion for trial court to admit list of employees in plaintiff's department prepared at the request of the EEOC, but excluding the EEOC's determination that the claim lacked probable cause); *Brom v. Bozell, Jacobs, Kenyon & Eckhardt, Inc.,* 867 F.Supp. 686, 692 (N.D.Ill.1994) (excluding administrative findings but admitting remainder of report).

Winner urges the DDOL determination must be excluded based on insufficient evidence of trustworthiness. It cites *Complaint of Nautilus Motor Tanker Co.,* 85 F.3d 105 (3d Cir.1996), for the proposition that the Court must consider certain factors before admitting the DDOL findings, including:

> (1) the timeliness of the investigation; (2) the investigator's skill and experience; (3) whether a hearing was held; and (4) possible bias when reports are prepared with a view to possible litigation.

85 F.3d at 112 (citing *Beech Aircraft Corp.,* 488 U.S. at 168 n. 11, 109 S.Ct. at 449 n. 11). Winner's position is Spruill has not presented evidence to satisfy these requirements, and therefore has not met his burden of proving the DDOL determination is admissible.

With the record silent as to trustworthiness, the Court is loathe to hold the findings of the DDOL are inadmissible based on lack of trustworthiness, despite general recognition that the quality of these findings may vary. *See Johnson,* 734 F.2d at 1308–09. The Court also does not believe *Nautilus Motor Tanker* necessarily controls, as it did not concern admissibility of EEOC or state department of labor findings. It is not necessary to resolve that issue, however, because the DDOL determination is inadmissible based on relevance and prejudice.

■ As reiterated by the Supreme Court in *Beech Aircraft Corp.,* one prerequisite for admissibility is relevance. 488 U.S. at 167, 109 S.Ct. at 448. The Federal Rules of Evidence define "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. The Court finds that the factual findings of the DDOL are not relevant because they are essentially admitted by Winner.

The fact findings of the DDOL echo the statements as detailed above, that Snyder referred to Spruill as "chocolate" and "nigger," made statements that "white man is God," and commented negatively on Spruill's marriage to a white woman. *See D.I. 76,* A8–A10.[2] After reviewing the deposition testimony—particularly Snyder's—the Court does not believe these issues are disputed. For example, Snyder testified he used the word chocolate to refer to African Americans and Spruill in particular, A130, A137; that he used the word nigger, although not in conversations with African Americans, A136; that he told Spruill to say "white man is God," A–138; and that he commented negatively on white women who dated African Americans. A–138. Snyder's testimony on these issues evinces his belief these statements were made in jest. A–139. Because the fact findings set forth in the DDOL's report are essentially admitted by Winner, they are cumulative and have limited rele-

**2.** The cites beginning with the prefix A refer to the appendix in support of the plaintiff's motion in limine.

vance.[3]  *Cf. Abrams v. Lightolier, Inc.,* 50 F.3d 1204, 1218 (3d Cir.1995).

■ On the other hand, the Court finds the DDOL's legal conclusions are inadmissible because of their potential prejudicial effect. Federal Rule of Evidence 403 permits the Court to exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." As pointed out, several courts have excluded the opinions or conclusions found in EEOC or state department of labor determinations based on prejudice to the parties. For example, in *Brom,* the court found admission of administrative conclusions were "tantamount to saying 'this has already been decided and here is the decision[.]'" 867 F.Supp. at 692 (quotation omitted).

In this case, DDOL found there is reasonable cause to believe Winner discriminated against Spruill on the basis of race, that Spruill was constructively discharged, and that Winner's actions violated Delaware law. *See* A7–A11. In doing so, the conclusion incorporates several statements of law. *Id.* For example, the conclusion states in order for Spruill to prove a hostile work environment, he must "demonstrate that the workplace is permeated with discriminatory behavior such that a reasonable person would find it intolerable." A10. Also, the conclusion states, "Since management is accused of the discriminatory actions, [Spruill] had no obligation to complain to management." A11. Instructing the jury on the law is the province of the Court; admitting such statements would only lead to jury confusion. Accordingly, because the conclusion is extremely prejudicial and also is likely to lead to significant jury confusion, it will not be admitted.[4]

## B. Winner's Liability for Acts of Middle Managers

Spruill next asks the Court to "enter an order that the Winner managers are agents of Winner and that Winner is directly liable for the conduct of those managers." D.I. 75, at 26. By this, the Court assumes Spruill wishes to bypass the need to present evidence of respondeat superior liability.

The Supreme Court in *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 72, 106 S.Ct. 2399, 2408, 91 L.Ed.2d 49 (1986), rejected the notion that "employers are always automatically liable for sexual harassment by their supervisors[,]" and instead directed courts to look to agency principles for guidance in determining employer liability. *Id.*[5] The Third Circuit Court of Appeals expanded upon this principle in *Knabe v. Boury Corp.,* 114 F.3d 407, 411 (3d Cir.1997), where it set forth three avenues for liability under agency principles. First, the court held, an employer could be held liable for the torts of its employees committed within the scope of employment. *Id.* The court quickly disposed of that possibility, holding sexual harassment rarely would fall within the scope of employment. *Id.* Similarly, this Court finds claims of racial harassment would not be within the scope of Winner management's employment. Second, the court held an employer could be held liable for negligent or reckless failure to take action to correct such harassment. *Id.* Finally, the court found employers could be liable if the offending supervisory employee relied on the agency relationship in perpetrating the harassment. *Id.* The court specifically rejected the argument that "respondeat superior liability automatically attaches to the employer when a supervisor, who has the authority to hire, fire, and discipline the victim of the harassment, creates the hostile work environment." *Id.* n. 7.

---

**3.** This discussion of the facts is not exhaustive with respect to every fact detailed by the DDOL or every fact admitted by defendants. For purposes of deciding the motion in limine, the Court has focused on some of the more egregious statements.

**4.** In so deciding, the Court does not decide whether the conclusion should be excluded

merely on the basis it was made under state law, as is argued by Winner.

**5.** Although *Meritor,* as well as several other cases discussed herein, concerned sexual harassment under Title VII, the principles are equally applicable to a Title VII case alleging racial harassment.

The plaintiff in *Knabe* proceeded under the second theory, above, alleging her employer responded negligently or recklessly to her claims of harassment. The court explained: "an employer is liable for an employee's behavior under a negligence theory of agency 'if a plaintiff proves that management-level employees had actual or constructive knowledge about the existence of a ... hostile work environment and failed to take prompt and adequate remedial action.'" 114 F.3d at 411.

Most relevant for purposes of Spruill's motion is the *Knabe* court's unstated assumption that the perpetrator of the harassment— the shift manager of the restaurant where the plaintiff worked—was not a "management-level employee," the named defendant being a corporation which owned at least four restaurants. Thus, it did not consider whether the restaurant manager himself had notice of the alleged harassment. Instead, the court focused on the plaintiff's contact with an individual higher up in the chain of command. There was no discussion in *Knabe* of the possibility that an individual might be harassed by a "management-level employee" such that the employer automatically is deemed to have constructive notice. Other circuit courts of appeals have recently begun to grapple with this issue. *See Torres v. Pisano*, 116 F.3d 625 (2d Cir.1997); *Harrison v. Eddy Potash, Inc.*, 112 F.3d 1437, 1446–47 (10th Cir.1997); *Faragher v. City of Boca Raton*, 111 F.3d 1530, 1535 (11th Cir. 1997).

The Court finds helpful the opinion of the Second Circuit Court of Appeals in *Torres*, 116 F.3d 625. In that case, the court distinguished between "low-level supervisors" who would generally be considered "indistinguishable from.... coworkers" in terms of imputing their conduct to the employer, and those employees occupying a position in the company management's "upper echelons." *Id.* at 633–35. Such a distinction seems called for by the Third Circuit Court of Appeals' opinion in *Knabe*.

Winner states in its answering brief that its general manager and sales manager were "management-level employees" based on their authority over Spruill, but that its business manager/"F & I manager" and its used car manager were not, based on the fact they had no supervisory authority over Spruill. D.I. 79, at 5–6. Snyder, the alleged primary perpetrator of the racist comments, was in the latter category. *Id.* at 6.

The Court does not rely on the amount of control these managers had over Spruill, because of the explicit statement of the Third Circuit Court of Appeals rejecting the premise that supervisory authority is a necessary and sufficient condition for respondeat superior liability. *Knabe*, 114 F.3d at 411 n. 7. Instead, the Court focuses on the distinction set forth in *Torres:* only the actions of those in the "upper echelons" of Winner Ford management will be imputed by law to Winner Ford.

■ Without the need to specifically define the "upper echelons," the Court finds neither the positions of business manager/ "F & I manager," nor used car manager qualifies as the "upper echelon," of Winner management. On the other hand, Winner Ford has conceded and the Court holds the sales manager and general manager are "upper echelon" Winner management. Accordingly, Winner Ford is not automatically liable for the actions of any managers other than its general managers and sales managers and Spruill must therefore prove respondeat superior liability for all acts alleged by the other managers. That burden will be satisfied if Spruill is able to establish at trial by a preponderance of the evidence that either or both Winner Ford's general manager or sales manager had actual or constructive knowledge of a hostile work environment and failed to take prompt and adequate remedial action.

## C. Evidence Concerning Harassment of Other Employees

Under Supreme Court and Third Circuit Court of Appeals precedent, Spruill can establish a Title VII violation based on a racially hostile working environment if he can demonstrate "by the totality of the circumstances, the existence of a hostile or abusive environment which is severe enough to affect the psychological stability of a minority em-

ployee." *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1081 (3d Cir.1996); *accord Knabe*, 114 F.3d at 410 (sexual harassment case). The test utilized by the Third Circuit is:

> (1) that he or she suffered intentional discrimination because of race; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same race in that position; and (5) the existence of respondeat superior liability.

*Aman*, 85 F.3d at 1081.

As part of his claim, Spruill wishes to introduce evidence of harassment of other employees that occurred before, during and after his employment at Winner. Such information will be used to establish "knowledge and intent of Winner, the *animus* of the management, the pervasiveness of the harassment, the credibility of Mr. Spruill and other witnesses to the harassment and discrimination, and the objective and subjective elements of a hostile racial environment claim[.]" D.I. 75, at 27. Winner opposes the introduction of such evidence on the basis it would lengthen the trial and result in "various and sundry mini-trials on facts and issues which are collateral at best." D.I. 79, at 7. Winner urges such evidence is excludable under Federal Rule of Evidence 403,[6] on the basis of undue delay.

█ As the fact-finder must consider the totality of the circumstances in evaluating Spruill's claim of a hostile work environment, it would be unduly restrictive to prohibit Spruill from adducing evidence of discrimina-

tion against other employees while Spruill was employed by Winner; such evidence is relevant to his claim. *Stair v. Lehigh Valley Carpenters Local Union*, 813 F.Supp. 1112, 1119 (E.D.Pa.1993). On the other hand, evidence of discrimination that occurred before or after his employ quickly loses its relevance. Without knowing the details of the evidence Spruill wishes to present, and the defenses which may be adduced a trial, the Court is unable to rule at this time on the admissibility of discrimination at times when Spruill was not an employee.

**D. Spruill's Response to Winner's Offer of Reinstatement**

Plaintiff next asks the Court to hold admissible a letter authored by plaintiff's counsel which was submitted to Winner in response to Winner's letter offering Spruill reinstatement. The letter sets forth plaintiff's counsel's belief that Spruill would not be protected from further racial harassment if he returned to work at Winner; it further communicates Spruill's rejection of the offer. *See* A173.[7] Winner opposes admission of the letter on the basis of prejudice and relevance.

Winner likely submitted its offer of reinstatement to reap the benefits of the Supreme Court's holding in *Ford Motor Co. v. EEOC*, 458 U.S. 219, 102 S.Ct. 3057, 73 L.Ed.2d 721 (1982), that an unconditional offer of reinstatement tolls the accrual of back pay from the date of the offer. The Court so held despite the fact that the offer in *Ford Motor Co.* did not include retroactive seniority, on the basis that the unconditional offer sufficiently served the goals of Title .

---

6. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

7. The letter states, in pertinent part:
My client contends that he suffered racial discrimination at his employment at Winner Ford. As you also know, Winner Ford has denied that the conduct has taken place and has the same individuals still in management positions.
I, therefore, believe that the offer does not protect Mr. Spruill from a continuing hostile

environment and racially discriminatory actions, conduct, comments, and treatment at Winner Ford and I do not believe that he has an obligation to return so as to cut off Winner Ford's liability for accrual of back pay and front pay, e.g., *Naylor v. Georgia–Pacific*, Civil Action No. 93–3053, [875 F.Supp. 564], (N.D. Iowa, Jan. 31, 1995).
I have communicated your offer to him and he does not want to return to that working environment that was racially pervasive and discriminatory. He is still undergoing treatment and counseling for the effects visited upon him by the pervasive and racially discriminatory conduct, words and actions at Winner Ford.

VII. The Court hinted that some offers would not satisfy the "unconditional" requirement—it stated, "[A]n applicant or discharged employee is not required to accept a job offered by the employer on the condition that his claims against the employer be compromised." *Id.* at 232 n. 18, 102 S.Ct. at 3066. Finally, it concluded, "absent special circumstances, the rejection of an employer's unconditional job offer ends the accrual of potential backpay liability." 458 U.S. at 241, 102 S.Ct. at 3070.

Some courts have interpreted this last statement by the Court to indicate even an unconditional offer may be rejected without any consequence to backpay liability if sufficient special circumstances exist. *See Giandonato v. Sybron Corp.*, 804 F.2d 120 (10th Cir.1986) (citing *Taylor v. Teletype Corp.*, 648 F.2d 1129 (8th Cir.1981)). One circumstance that has been recognized is the anticipation of continuing harassment. *Wilcox v. Stratton Lumber, Inc.*, 921 F.Supp. 837 (D.Me.1996); *Naylor v. Georgia–Pacific Corp.*, 875 F.Supp. 564 (N.D.Iowa 1995).

■ Without commenting on the validity of that legal theory, the Court holds the letter is inadmissible based on relevance and prejudice. First, insofar as the views of *plaintiff's counsel* are set forth in the letter, such views are irrelevant to Spruill's reasons for rejecting the offer. It is clear the letter is just so much legal posturing, and need not be accepted as anything more. Second, the plaintiff can offer his own testimony as to his reasons for rejecting the offer, rendering the remainder of the letter cumulative. Accordingly, the letter will not be admitted.

### E. Addition of Witness to Pretrial Statement

■ The parties disagree as to whether John Hynansky, the owner but not general manager of Winner Ford, may be listed as a witness at trial. Spruill urges Hynansky—who manages Winner Incorporated and Winner Group Management, neither of whom are defendants—has been identified as a person with knowledge of the events at issue, and has been deposed. Winner, on the other hand, states Hynansky has no personal knowledge of the alleged harassment of Spruill, and therefore, Spruill should not be permitted to call him as a witness at trial. Neither party provides more information than this. After reviewing the file, the Court concludes Hynansky was never identified in the joint pretrial order as a potential witness. *See* D.I. 58. Accordingly, he may not be added at this late date. Spruill's motion will be denied.

### F. Winner's Motion to Compel Production of Witness Statements

Winner asks the Court to order production of two witness statements, or in the alternative, preclude the two witnesses from testifying. One witness is Roger Wollaston, general manager at Winner during Spruill's employment; the other is Anthony Zaccardelli, a sales person at Winner also during Spruill's employment there.

According to Winner, Spruill noticed the deposition of Wollaston, and subsequently asked if Winner would produce him without a subpoena. Winner declined, and there were no further communications between the parties on the issue. Winner assumed the deposition would not go ahead; it did not, but plaintiff took a statement (presumably sworn) with a court reporter present. Winner now wishes to have a copy of the transcript. Plaintiff similarly interviewed Zaccardelli in the presence of a court reporter, and Winner seeks a copy of that transcript as well. Spruill defends on the basis of work product, and, it adds, Winner's request is tardy, coming as it did after the close of discovery.

Putting aside the alleged tardiness of Winner's motion, the Court looks to guidance from Federal Rule of Civil Procedure 26(b)(3), which would govern Winner's motion if made in the discovery context. That rule permits discovery of "documents ... prepared in anticipation of litigation or for trial by or for another party ... only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means."

■ It is undisputed the witness statements at issue were taken in preparation for litigation. Accordingly, at issue is whether Winner has made a sufficient showing of substantial need and undue hardship. The Court finds Winner has not; Winner interviewed Wollaston, *see* D.I. 80, Exh. A, and is not precluded from taking its own *ex parte* statement of either witness with a court reporter present. The only reason Winner advanced for needing these statements is effective impeachment. *See* D.I. 78. That argument is meritless; the possibility of impeachment does not satisfy the showing required by Rule 26. *Carson v. Mar–Tee Inc.*, 165 F.R.D. 48 (E.D.Pa.1996); *Dingler v. Halcyon Lijn N.V.*, 50 F.R.D. 211 (E.D.Pa.1970). Winner's motion will be denied.[8]

8. The Court is not persuaded otherwise by *Dobbs v. Lamonts Apparel, Inc.*, 155 F.R.D. 650 (D.Alaska 1994), cited by Winner, which held verbatim witness statements were not covered by the work product doctrine. That holding appears contrary to the language of Rule 26(b)(3), which covers "documents ... prepared in anticipation of litigation...." *See* 8 Charles Alan Wright, Richard L. Marcus, *Federal Practice and Procedure* § 2024 (2d ed.1994) (discussing application of work product doctrine to witness statements).